*217 OPINION OF THE COURT
Per Curiam.
Cromwell Construction, Inc., a general contractor, hired Hudson Steel Fabricators & Erectors, Inc., to perform certain work on a building project on property owned by G. W. Lisk Co., Inc. After an employee of Hudson suffered injuries on the job and obtained a settlement against Cromwell and Lisk, a jury apportioned liability in negligence against Cromwell (12%) and Hudson (88%). The trial court granted summary judgment to Cromwell in its third-party action against Hudson on the ground that Hudson had failed to procure insurance coverage for Cromwell against personal injury claims as the two had agreed in their subcontract. On Hudson’s appeal, the Appellate Division affirmed, holding that the contractual provision requiring Hudson to maintain insurance for Cromwell did not violate General Obligations Law § 5-322.1. We agree.
Paragraph 6.4 of the subcontract between Cromwell and Hudson provides that the "Subcontractor [Hudson] shall maintain such insurance policies * * * as will protect both the Contractor [Cromwell] and the Subcontractor [Hudson] * * * from claims for damages because of bodily injury * * * which may arise both out of and during its performance under this Agreement or after completion thereof [emphasis added]”. We have previously upheld similar agreements against challenges that they violate other sections of the General Obligations Law which, like section 5-322.1, prohibit agreements intended to free certain promisees from liability for their own negligence (see, e.g., Board of Educ. v Valden Assocs., 46 NY2d 653, 657 [building owner’s agreement to obtain liability coverage for contractor and subcontractors not violative of General Obligations Law § 5-323]; Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 160 [commercial tenant’s agreement to maintain liability insurance for landlord not violative of General Obligations Law § 5-321]). For reasons analogous to those *218 that governed our decisions in those cases, we uphold the agreement at issue here.
General Obligations Law § 5-322.1 renders void and unenforceable any provision or agreement in connection with building construction "purporting to. indemnify or hold harmless the promisee against liability for damage arising out of bodily injuries to persons * * * contributed to, caused by or resulting from the negligence of the promisee, his agents or employees [emphasis added]”. By its terms, the statute addresses only agreements to indemnify or hold harmless. It makes no reference to agreements to purchase or maintain insurance such as that contained in the subcontract here, and there is no basis for construing the statute’s narrow and unambiguous prohibition to cover such agreements. An agreement to procure insurance is not an agreement to indemnify or hold harmless, and the distinction between the two is well recognized (see, Roblee v Corning Community Coll., 134 AD2d 803, lv denied 72 NY2d 803; Grant v United States, 271 F2d 651, 655-656 [2d Cir]). Whereas the essence of an indemnification agreement is to relieve the promisee of liability, an agreement to procure insurance specifically anticipates the promisee’s "continued responsibility” for its own negligence for which the promisor is obligated to furnish insurance (Hogeland v Sibley, Lindsay & Curr Co., supra, at 161; see also, Board of Educ. v Valden Assocs., supra, at 657; 4 Appleman, Insurance Law and Practice § 2261).
Moreover, this particular distinction is what renders indemnification, but not insurance-procurement, agreements violative of the public policies underlying General Obligations Law § 5-322.1. While an agreement purporting to hold an owner or a general contractor free from liability for its own negligence undermines the strong public policy of placing and keeping responsibility for maintaining a safe workplace on those parties (see, e.g., Labor Law §§ 200, 240), the same cannot be said for an agreement which simply obligates one of the parties to a construction contract to obtain a liability policy insuring the other (see, Board of Educ. v Valden Assocs., supra, at 657; Hogeland v Sibley, Lindsay & Curr Co., supra, at 161).
Indeed, the legislative history of section 5-322.1 unambiguously reveals that insurance-procurement agreements were intended to survive the statute’s proscriptions. The Legislature’s particular purpose in enacting the statute was to invalidate "so-called 'broad form hold-harmless’ clauses”, then prev *219 alent in the construction industry, which "caus[ed] contractors and subcontractors to assume liability for the negligence of others” (Assembly sponsor’s supporting Mem, Assembly Bill A. 862-B, Bill Jacket, L 1975, ch 408 [emphasis added]). The Legislature anticipated that the statute would effect substantial savings in the cost of construction projects specifically because it had found that liability protection insurance, which contractors and subcontractors could still be required to procure, was considerably less expensive than hold-harmless coverage, which they would no longer need to purchase (id.; Senate sponsor’s supporting Mem, Senate Bill S. 946-B [A. 862-B]; see also, New York State Thruway Authority, letter in opposition, June 9, 1975; Metropolitan Transportation Authority, letter in opposition, June 20, 1975; cf., Brown v Two Exch. Plaza, 76 NY2d 172 [decided herewith]). Hence, the Legislature not only distinguished between hold-harmless and insurance-procurement agreements, but also fully expected that the latter would continue to be incorporated into construction contracts.
Finally, because Hudson breached its agreement to procure liability insurance covering Cromwell, it is liable for the resulting damages, including Cromwell’s liability to plaintiff (see, Roblee v Corning Community Coll., supra, at 805; 4 Appleman, Insurance Law and Practice § 2269; Robinson v Janay, 105 NJ Super 585, 253 A2d 816, 819).*
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Order affirmed, with costs.

 To the extent that Patenaude v General Elec. Co. (147 AD2d 335) is to the contrary, it should not be followed.