973 F.2d 155
 GREYHOUND EXHIBITGROUP, INC., Plaintiff-Appellee,
v.
E.L.U.L. REALTY CORP., Defendant-Appellant,
Anthony Gallina d/b/a Gallina Sprinkler Systems, and A.
Gallina Sprinkler Systems and A. Gallina Heating
and Mechanical Sprinkler Corp., Defendants.
 No. 1954, Docket 92-7545.
 United States Court of Appeals,
Second Circuit.
 Argued July 14, 1992.
Decided Aug. 24, 1992.
 
 Kenneth A. Bloom, New York City (Douglas B. Lang, Cozen and O'Connor, of counsel), for plaintiff-appellee.
 Noel W. Hauser, New York City (Stephen H. Penn & Associates, of counsel), for defendant-appellant.
 Before: ALTIMARI, MAHONEY, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 This is an appeal from the final judgment of the United States District Court for the Eastern District of New York, Honorable I. Leo Glasser, Judge, adopting the report and recommendation of Magistrate Judge John L. Caden. The case involves plaintiff-appellee's, Greyhound Exhibitgroup, Inc. ("GEX"), claim for damages allegedly caused by the defendant-appellant's, E.L.U.L. Realty Corp. ("ELUL"), negligence in conjunction with a warehouse fire. During the relevant period, GEX was a tenant in ELUL's warehouse.
 
 
 2
 The particular dispute before us stems from the fact that ELUL defaulted in this action by failing to timely answer GEX's complaint. Upon the district court's entry of default against ELUL, the case was referred to the magistrate judge to conduct an inquest into the actual amount of financial injury that GEX suffered. See 28 U.S.C. § 636(b)(2); Fed.R.Civ.P. 53. At the close of the inquest, the magistrate judge recommended to the district court that ELUL be ordered to pay GEX $1,496,425.60 in damages. The district court adopted the magistrate judge's report and recommendation substantially in its entirety, and entered judgment against ELUL for $1,496,425.82, along with costs and interest at the New York State statutory rate of 9%.
 
 
 3
 On appeal ELUL raises a host of issues, all of which we find to be without merit.BACKGROUND
 
 
 4
 This litigation has an extremely knotted procedural and factual history which we need not fully untangle in order to address the issues raised on this appeal. The following discussion will suffice for the purposes of our analysis.
 
 
 5
 GEX is a Delaware corporation, with its principal place of business in Elk Grove Village, Illinois. It is engaged in the production, assembly and storage of exhibits used in trade sales. ELUL is a New York corporation, with its principal place of business in Brooklyn, New York. Among other properties, ELUL owns and operates a warehouse (the "warehouse") located at 14 Whale Square, Brooklyn, New York. In January 1983, the parties entered into a lease agreement whereby GEX rented a substantial portion of the warehouse in which to conduct its business. On February 13, 1988, a fire broke out on the premises causing considerable property damage to GEX and other tenants.
 
 
 6
 In September 1988, GEX commenced this diversity action against ELUL, and others, alleging, inter alia, that the fire damage it suffered resulted from ELUL's negligent failure to maintain the warehouse's sprinkler system in good working order. GEX sought $1,500,000 in compensatory damages. On November 22, 1988, after ELUL failed to timely appear, answer, or otherwise make a motion with respect to GEX's complaint, the district court adjudged ELUL to be in default and ordered that an inquest be scheduled in order to determine the appropriate damage award. Over four months later, on April 12, 1989, ELUL moved the district court to vacate its entry of default. The district court referred the question of vacatur to Magistrate Judge Caden for a report and recommendation.
 
 
 7
 On September 12, 1989, Magistrate Judge Caden entered an order and recommendation requiring that ELUL give written notice to all parties regarding any change in status as to ELUL's ownership or encumbrance of the warehouse property, and recommending that the default be set aside upon that condition. GEX filed objections to the recommendation. The district court was informed that ELUL had, in bad faith, violated the recommendation's notice condition by mortgaging the warehouse property for an additional $4.5 million on January 18, 1990 without advising either the court or GEX. Accordingly, the district court recommitted ELUL's vacatur motion to Magistrate Judge Caden for further consideration.
 
 
 8
 Upon reconsideration, the magistrate judge found that:
 
 
 9
 The history of this case leaves little room for doubt that an unconditional vacatur would provide [ELUL] with an opportunity for fraud and could seriously prejudice [GEX]. The red flag of caution is amply supported by the combination of [ELUL's] consistent failure to observe court-imposed deadlines, the evidence of its attempts to secrete or dissipate a substantial asset, and the extended discourse over the existence and extent of insurance.
 
 
 10
 Nevertheless, Magistrate Judge Caden determined that ELUL should have the opportunity to litigate this sizeable claim on the merits. So as to allay his concern that GEX's ability to collect on any potential judgment might be prejudiced by ELUL's intervening actions, on July 23, 1990, he recommended that the entry of default be vacated upon the condition that ELUL post a $1 million bond within thirty days after issuance of the district court's order. By order dated November 7, 1990, the district court adopted Magistrate Judge Caden's recommendation.
 
 
 11
 Consistent with its previous conduct, ELUL failed to timely post the $1 million bond. In a letter dated December 13, 1990, ELUL asserted, inter alia, that it was unable to satisfy the bond requirement. On March 20, 1991, the district court denied ELUL's application for relief from its prior order requiring ELUL to post bond, entered judgment for GEX, and again ordered that an inquest be held to set plaintiff's damages. In what had become a familiar refrain, ELUL moved to vacate the district court's March 20th order. The district court reiterated the magistrate's findings in stating that:
 
 
 12
 [I]t is readily apparent that Elul holds little regard for rules of civil procedure and for orders of the court. The court lacks confidence that Elul would observe an order to maintain the status quo. A vacatur would simply provide Elul with an opportunity for further wrongdoing, at the expense of GEX.
 
 
 13
 The court thereupon denied ELUL's motion to vacate its entry of default judgment.
 
 
 14
 In December 1991, Magistrate Judge Caden conducted an inquest to assess GEX's damages. He received evidence regarding the costs that GEX incurred as a result of fire damage to trade exhibit works under construction, to supplies, goods and other materials, and to rental properties, as well as additional freight and storage charges that flowed from the loss of warehouse space. During the inquest, ELUL attempted to introduce evidence regarding comparative negligence of GEX that allegedly contributed to the warehouse fire. Furthermore, ELUL tried to argue that any damage award should be generally off-set by the $1 million amount of fire insurance which GEX was contractually obligated to provide under the lease but failed to obtain, and, more specifically, that the award for additional freight and storage costs should be off-set by the $250,000 in rental payments that GEX withheld from ELUL after the fire. ELUL contended that these factors should be considered in mitigation of damages.
 
 
 15
 The magistrate judge refused to consider any evidence with regard to ELUL's proposed set-offs. Upon conclusion of the inquest, he recommended to the district court that ELUL pay GEX $1,496,425.60 in damages. On April 22, 1992, the district court adopted the magistrate's report and recommendation substantially in its entirety (merely correcting a slight mathematical error), and entered final judgment against ELUL in the amount of $1,496,425.82. ELUL moved in the district court to stay the enforcement of GEX's judgment pending appeal, which motion was denied. Ordering that ELUL post a $200,000 supersedeas bond, as well as furnish a note and supporting mortgage on the property to GEX for the amount of the judgment, a panel of this Court stayed its enforcement. This appeal followed.
 
 DISCUSSION
 
 16
 The core of ELUL's argument on appeal is that during the post-default inquest, both the magistrate judge and the district court erroneously refused to consider evidence in "mitigation of damages." ELUL contends that GEX's: (1) alleged comparative negligence with respect to the warehouse fire; (2) failure to provide fire insurance as required by lease; and (3) withholding of rental payments, represent valid set-off claims regarding the extent of GEX's damages and, thus, should have been addressed by the court at the inquest. In response, GEX argues that ELUL is merely attempting to reopen the question of its substantive liability, which had been definitively closed by ELUL's failure to answer its complaint. We believe that the rule governing the scope of damage mitigation at a post-default inquest is not as clear cut as either ELUL or GEX would have it.
 
 
 17
 While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir.1974); Fed.R.Civ.P. 8(d). Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount. See Flaks, 504 F.2d at 707; see also U.S. v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir.1989); cf. Fed.R.Civ.P. 55(b)(2). The question before us now is whether and to what extent at a post-default inquest, a defaulting party may seek to mitigate damages by interposing set-off claims.
 
 1) GEX's Comparative Negligence
 
 18
 Concerning the scope of damage recovery pursuant to a default judgment, we have stated that:
 
 
 19
 The outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment did not give [plaintiff] a blank check to recover from [defendant] any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show "proximate cause." On the other hand, there was no burden on [plaintiff] to show that any of [defendant's] acts caused the well-pleaded injuries, except as we have indicated that it had to for the purpose of establishing the extent of the injury caused [plaintiff], in dollars and cents.
 
 
 20
 Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir.1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).
 
 
 21
 ELUL reads our statement in Hughes to mean that "default or not, a plaintiff must show that the actions of the defendant were the proximate cause of the damages claimed by the plaintiff." ELUL's argument continues that because New York law (which presumably controls the outcome of this diversity case) permits the apportionment of damages based upon the percentage of culpability attributable to each party, see N.Y.Civ.Prac.L. & R. 1411 (McKinney 1976 & Supp.1992), it should have been allowed at the inquest to prove GEX's relative fault with respect to the warehouse fire, and mitigate its damages accordingly. Judge Altimari, in his dissent from this portion of the majority opinion, adopts ELUL's argument. We think that both ELUL and the dissent read Hughes too broadly.
 
 
 22
 There is a categorical distinction between the element "proximate cause," as it pertains to the assignment of liability in the first instance, and "proximate cause" as it relates to the ministerial calculation of damages in the context of a default judgment. With regard to liability, the concept of proximate cause supplies the legal nexus between act and injury, and provides a necessary basis for awarding compensation. Where it is properly alleged in a complaint, proximate cause--going to liability--is completely and irrefutably established upon the defendant's default. See Flaks, 504 F.2d at 707; see also Benny v. Pipes, 799 F.2d 489, 495 (9th Cir.1986), cert. denied, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); Fed.R.Civ.P. 8(d). However, as employed in Hughes, the concept of proximate cause was merely used to set the limits of recovery according to the injuries that were conceded by default. Thus, in the Hughes context, the application of proximate cause presumes that liability has been established, and requires only that the compensation sought relate to the damages that naturally flow from the injuries pleaded. 449 F.2d at 70.
 
 
 23
 In its complaint, GEX sufficiently alleged that ELUL's negligence was the proximate cause of the fire damage. Those allegations were deemed admitted upon ELUL's failure to timely answer. ELUL's contention, that it should have been permitted to introduce evidence of GEX's comparative negligence, effectively contests settled issues of liability, i.e., who in fact caused the fire damage. If accepted, ELUL's position would undermine both our decision in Hughes as well as the general policy governing default. To permit ELUL to argue comparative fault under the guise of damage mitigation now, at the inquest stage of the proceedings, would deny GEX the benefit of Rule 8(d). But cf. Fehlhaber v. Indian Trails, Inc., 425 F.2d 715, 717 (3d Cir.1970) (where third-party complaint, inter alia, requested the court to determine relative fault, default by third-party defendant did not preclude the court from assessing damages according to comparative negligence).
 
 2) GEX's Failure to Acquire Fire Insurance
 
 24
 According to ELUL, GEX breached its lease obligation to furnish $1 million in fire insurance. Citing New York law, see, e.g., Kinney v. G.W. Lisk Co., 76 N.Y.2d 215, 219, 557 N.Y.S.2d 283, 285-86, 556 N.E.2d 1090, 1092-93 (1990) (per curiam), ELUL claims that GEX is liable for the amount of insurance that it failed to provide and, as a result, the district court should have offset GEX's damage award by $1 million. GEX responds that, postdefault, ELUL was procedurally barred from raising a claim for an insurance set-off. We agree with GEX.
 
 
 25
 The essential facts concerning GEX's alleged failure to indemnify ELUL by supplying fire insurance were " 'so logically connected [to GEX's claim against ELUL for fire damage] that considerations of judicial economy and fairness dictate[d] that all the issues be resolved in one lawsuit.' " United States v. Aquavella, 615 F.2d 12, 22 (2d Cir.1979) (quoting Harris v. Steinem, 571 F.2d 119, 123 (2d Cir.1978)). On this score, ELUL's claim against GEX was a compulsory counterclaim. See id.; Fed.R.Civ.P. 13(a). By failing to assert it in a timely responsive pleading, ELUL is now foreclosed from raising it in any subsequent proceeding--including the post-default damages inquest presently under review. See Taylor v. City of Ballwin, 859 F.2d 1330, 1333 n. 7 (8th Cir.1988) ("By choosing not to respond, [defendants] will not now be heard to deny this claim; nor will they be allowed to raise a counterclaim for set-off."); Carteret Sav. & Loan Ass'n v. Jackson, 812 F.2d 36, 38 (1st Cir.1987) ("when a defendant is defaulted for failure to file a pleading, the default applies to whatever the party should have pleaded"); 6 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1417 (1990).
 
 
 26
 3) GEX's Additional Freight and Storage Costs
 
 
 27
 As part of its overall damage award, the district court ordered ELUL to pay GEX $90,857.44 for certain freight and storage costs incurred as a result of GEX's loss of warehouse space. At the inquest, the magistrate judge refused to consider ELUL's claim that GEX had already made itself whole in this regard by reducing its warehouse rental payments. ELUL argues that the district court's award reimbursing GEX for these costs effectively granted GEX partial double recovery. While we hold that ELUL's default did not deny it the right to assert its claim for withheld lease payments against GEX, we agree with the district court's decision to defer consideration of this claim until the disposition of the separate landlord/tenant action commenced by ELUL.
 
 
 28
 In asserting its right to a set-off for withheld lease payments, ELUL is not seeking to litigate issues of liability that were determined in GEX's favor as a result of the default. Rather, ELUL proffered the evidence at issue in order to establish that GEX had mitigated its freight and storage cost damages by withholding lease payments that GEX was contractually obligated to make to ELUL under the lease. Because the evidence of lease payments allegedly owed and not paid by GEX concerned issues of damages--not liability--Rule 8(d) did not preclude ELUL from asserting and the district court from considering this evidence at the inquest. Indeed, if the district court's decision to refuse to consider evidence of alleged withholdings by GEX foreclosed ELUL's ability to assert its right to recover withheld lease payments from GEX, the decision would have been in error. GEX bore the burden of proving "in dollars and cents" each item of damage it claimed, Hughes, 449 F.2d at 70, and ELUL had a right to proffer evidence rebutting each damage claim, including by introducing evidence of mitigation of damages by GEX.
 
 
 29
 However, ELUL has not lost its ability to assert its alleged right to payments under the lease as a result of the district court's decision to deny consideration of the set-off claim. The district court's decision to deny any set-off was premised upon the fact that ELUL has independently asserted its lease payment claim in a separate pending landlord/tenant action against GEX. For reasons of efficiency, the district court chose to defer consideration of ELUL's alleged right to the withheld lease payments until hearing the lease-related action. Greyhound Exhibitgroup, Inc. v. ELUL Realty Corp., No. CV-88-3039, slip op. at 7 (E.D.N.Y. May 11, 1992). The district court apparently was concerned that resolution of ELUL's lease-related claim might involve consideration of a range of factual and legal issues unrelated to GEX's tort claims and thus unduly delay disposition of this action. Moreover, the outcome of the landlord/tenant action could undo any set-off ELUL might achieve were it permitted to assert its claim for lease payments at the inquest.
 
 
 30
 We believe that the district court is in the best position to determine the most efficient and expeditious means of resolving the procedurally and factually complicated litigations arising from the warehouse fire. And, given that ELUL remains free to assert--and GEX remains free to challenge--the withheld lease payments claim in the pending landlord/tenant action, we can find no error in the district court's refusal to consider the lease payments claim at the inquest.
 
 CONCLUSION
 
 31
 While at times the repercussions of default may seem harsh, "[t]he purpose behind default judgments ... is to allow district courts to manage their dockets efficiently and effectively." Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 253 (7th Cir.1990). If we were to allow a defaulting party to contest liability and interpose general set-offs at the damages inquest, we would eviscerate the rule governing defaults, and for all practical purposes deprive the district courts of this important case management tool. On the other hand, a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages. ELUL--through its claim for withheld lease payments--may be able to establish that GEX mitigated its freight and storage cost damages. And this damage-related claim was not foreclosed by ELUL's default. However, the district court acted within its discretionary power to manage its docket in withholding consideration of ELUL's lease payments claim until hearing of ELUL's pending landlord/tenant action.
 
 
 32
 We have considered all of ELUL's other arguments and find them to be without merit.
 
 
 33
 Affirmed.
 
 
 34
 ALTIMARI, Circuit Judge, concurring in part and dissenting in part:
 
 
 35
 It is clear that a default judgment has the effect of conclusively establishing two elements of a plaintiff's case: whether a defendant's acts or omissions were negligent and whether those acts or omissions proximately caused an injury to a plaintiff. See Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). However, Trans World Airlines was equally clear in holding that a default does not alleviate plaintiff's burden of establishing that the injury was the proximate cause of all of the damages claimed by the defendant. Id.; see also Fehlhaber v. Indian Trails, Inc., 425 F.2d 715, 717 (3d Cir.1970) (holding that a default judgment did not preclude the court from assessing damages according to comparative negligence). Put differently, a default judgment establishes whether a plaintiff suffered damage; it does not, however, establish the amount of those damages. The holding in Trans World Airlines is both binding and sensible, but the majority pays it no heed. Because the majority's opinion is at odds with binding circuit precedent, I must respectfully dissent from that portion of the majority's decision which holds that where the damages "naturally flow from the injuries pleaded", a default removes from a plaintiff the burden of establishing that the amount of damages claimed was proximately caused by the injury suffered.
 
 
 36
 As the majority indicates, the underlying action in this case stemmed from a fire on February 13, 1988, at a warehouse owned by appellant Elul Realty Corp. ("Elul"). Appellee Greyhound Exhibitgroup, Inc. ("GEX") was a tenant in the building, and suffered significant property damage as a result of the fire. In its complaint, GEX did not allege that Elul's negligence caused the fire. Rather, the complaint asserts that the fire spread as a result of Elul's negligence in maintaining a sprinkler system.
 
 
 37
 At the hearing on damages, the magistrate refused to allow the Supervising Fire Marshall in attendance at the fire to testify in Elul's behalf. The Fire Marshall had previously submitted an investigative report in which he described how the fire originated through "horseplay" among a few of GEX's employees. In an affidavit, the Fire Marshall concluded that even if the sprinkler system had been fully operational it would have had a negligible effect in controlling the fire. As the Fire Marshall noted, the sprinkler head above the point of origin of the fire was in the roof. Therefore, according to the Fire Marshall, even if the sprinkler system had been fully operational, by the time sufficient heat had risen to activate it, the fire would have already reached the flammable liquid stored by GEX, and the sprinkler system could not have controlled the fire. However, the Fire Marshall's testimony was deemed irrelevant by the magistrate, since it did not speak to the amount of damages caused by the fire.
 
 
 38
 The district court did not question the exclusion of this testimony; neither does the majority. Indeed, according to the majority, to permit the introduction of evidence of GEX's contributory negligence "effectively contests settled issues of liability, i.e. who in fact caused the fire damage." This statement makes clear that the majority's decision, by inflating the admission of liability to encompass damages as well as injury, has sub silentio relieved the plaintiff of the burden of proving "those damages arising from the acts and injuries pleaded", Trans World Airlines, 449 F.2d at 70, in direct contravention of Trans World Airlines' holding that a default judgment only proves "the fact of ... the injury", not the extent thereof. Id. The end result of this compression is that the plaintiff is relieved of its burden of showing that the breach of the duty of care, for which defendant is liable, proximately caused the damages alleged. See Trans World Airlines, 449 F.2d at 70.
 
 
 39
 Elul's default established its liability only as to the fact of the injury alleged, not the extent of the damages proximately caused by that injury. Id. at 69. This is because when a defendant defaults, the "burden of establishing proximate cause is satisfied as to liability if proximate cause is adequately alleged in the complaint." Id. at 70 (emphasis in original). However, the default judgment did not relieve GEX of establishing that the injury proximately caused by Elul's negligence was in turn the cause of the "damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show 'proximate cause.' " Id. In other words, Elul's default established the existence of its liability, not the extent of its liability. Id. at 70; see also Restatement (Second) of Torts § 454 cmt b. (1965) (proof of proximate cause is necessary for the establishment of liability, as well as for the establishment of the amount of damages where liability is admitted).
 
 
 40
 Under Trans World Airlines, Elul's default precluded it from grounding its defense on an assertion that it properly maintained the sprinkler system. The default also established that Elul's negligent act proximately caused the fire to spread, which was the injury alleged. Id. at 70. However, the default judgment did not give GEX a "blank check" to recover damages "it had suffered from whatever source." Id. Consequently, GEX had the burden of proving that all of the damages alleged were proximately caused by the spread of the fire, which by reason of the default was admitted to have been the proximate result of Elul's negligent acts or omissions. In order to meet this burden, GEX should have been required to prove that none of the damages was proximately caused by the negligence of its own employees in starting the fire or in its negligent storage of flammable materials.
 
 
 41
 Because the district court failed to require GEX to submit such proof, and in fact denied Elul the opportunity to submit proof that the damages were not the sole result of the injury for which it was liable, I would vacate the award and remand for a determination of the extent to which Elul's negligence proximately caused the damages suffered by GEX.