OPINION OF THE COURT
Walter J. Relihan, Jr., J.
Cornell University (Cornell) hired Beacon, now Beacon Skanska USA, as the construction manager of a project to reconstruct Sage Hall. For present purposes, Cornell and Beacon may be treated as one. Beacon awarded contracts to a number of major subcontractors to perform the work. In each case, the contract required the subcontractor to obtain insurance “for the subcontractor’s work” to cover Cornell and Beacon, as additional insureds.
The plaintiff, a construction worker employed by Paolangeli Contractor (an earthwork and asphalt subcontractor), moves for summary judgment on his Labor Law claims, Labor Law § 240 (1) and § 241 (6), against Cornell and Beacon, and Welliver McGuire (Welliver) (the concrete, masonry and stone work contractor). Beacon brings a third-party claim against Paolangeli Contractor and Welliver McGuire for breach of the agreements to insure the interests of the owner and project manager. All parties move and cross-move for summary judgment.
The plaintiff was instructed to follow an electrical extension cord back to its source. This required him to leave his excavation work site and follow the wire into the basement area of Sage Hall. He followed the cord down steps into a basement and turned a corner to an unlit and darkened space. He walked forward and fell into an uncovered and unbarricaded hole in the floor about 5 to 7 feet deep and 3 to 4 feet in width.
*561 The plaintiffs section 240 (1) cause of action must be dismissed. He was not at an elevated work site, was not struck by a falling object and, consequently, was not exposed to the specific dangers which section 240 (1) was enacted to remove or minimize (D’Egidio v Frontier Ins. Co., 270 AD2d 763; Masullo v City of New York, 253 AD2d 541; Ozzimo v H.E.S., Inc., 249 AD2d 912, 914; Riley v Stickl Constr. Co., 242 AD2d 936; Duke v Eastman Kodak Co., 248 AD2d 990; Francis v Aluminum Co., 240 AD2d 985). The motion of the third-party defendant subcontractor to dismiss the plaintiffs section 240 (1) claim is also granted.
The plaintiff contends that the Appellate Division in the Third Department, unlike the other Departments, has taken the view that only a difference in elevation is required to invoke the absolute liability provisions of section 240 (1), and that an elevated work site is not required. We believe plaintiffs view mistakes the Third Department position: See, in particular, D’Egidio v Frontier Ins. Co. (supra, at 766), where the Court states: “The conclusion that mere proximity to an elevation differential, alone, is insufficient to trigger the protection of Labor Law § 240 (1) is well supported by Rocovich [infra] and its progeny.”
The authorities cited by plaintiff in support of his understanding of the Third Department position are distinguishable: In Nichols v Deer Run Investors (204 AD2d 929), the plaintiff fell from a plank across a trench, 5 to 8 feet deep. The Court equated the plank to a scaffold. In Covey v Iroquois Gas Transmission Sys. (218 AD2d 197), the plaintiff had been required to climb five feet upward to mount a machine (an elevated work site) and fell into an adjoining ditch. In LaJeunesse v Feinman (218 AD2d 827), plaintiff, from ground level, walked up a plank toward a higher level and fell when the ramp (scaffold?) collapsed. Similarly, in Tooher v Willets Point Contr. Corp. (213 AD2d 856), the plaintiff fell from a beam which bridged a ditch 10 to 15 feet deep. The plaintiff was dislodged from the beam (a scaffold or elevation or both?) and slid into the ditch. In Bowen v Hallmark Nursing Centre (244 AD2d 597), plaintiff fell from an elevated work site (a 16-inch block used to reach needed materials) into an adjoining ditch.
Our own DeLong v State St. Assocs. case (211 AD2d 891) comes closest to assisting the plaintiff’s argument. DeLong had been working on a series of outdoor terraces at levels which echeloned downward. He fell from one terrace in the series to a lower one. We held that each terrace was a work site, that *562 each terrace was at an elevation and, therefore, that the fall was covered by section 240 (1). The appellate court affirmed stating: “for while DeLong’s worksite was at ground level, his injury nevertheless resulted from a ‘difference between the elevation level of the required work and a lower level’ (Rocovich v Consolidated Edison Co., 78 NY2d 509, 514)” (DeLong, 211 AD2d, at 892; emphasis supplied). This sentence, while facially contradictory, must be interpreted to mean that some jobs, performed at ground level, may fall within the terms of the statute if the particular “ground level” site is itself poised at an elevation above some perceived project base line. No such circumstance is present in this case. The darkened basement room is, in no sense, an elevated work site.
Confessedly, the judicial interpretations of section 240 (1) have abandoned any real connection with the specific language of the statute and, in consequence, not all of the swarming cases on the topic can be reconciled. See, for example, John v Baherstani (281 AD2d 114 [1st Dept, Mar. 6, 2001]) and Carpio v Tishman Constr. Corp. (240 AD2d 234, 235-236) in which the First Department, in a 3-2 decision, held that section 240 (1) applies to a worker who, while painting a ceiling, stepped into a hole in the floor measuring 10 to 14 inches in width. Students of Carpió will note the absence of a work site which, in any conception, is elevated above its surroundings. There is no object falling from above. There is no scaffold or any other device involved in the accident which is mentioned or even suggested by the words of the statute (cf. Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501). One can only surmise that the purposes which courts have been persuaded to assign to the statute, in some instances, have overtaken and superseded its plain terms. The dissenters, in Carpió, would seem to have the better argument. More importantly, the dissent is in accord with the preponderance of the cases decided by the Third Department, to which this court owes paramount deference.
The plaintiff, however, has established a valid cause of action under section 241 (6) and the regulations at 12 NYCRR 23-1.7 (b) (1) which provide that every hazardous opening shall be guarded. 12 NYCRR 23-1.15 specifies the manner by which every such opening is to be guarded by railings. These are specific rules and not mere general admonitions to work safely (cf. Ross v Curtis-Palmer, supra, at 502-503). The fact that the opening was not located at the precise work site assigned to plaintiff is not fatal to his claim. The duty, under section 241 (6), “ ‘extends not only to the point where the * * * work was *563 actually being conducted, but to the entire site, including passageways * * * in order to insure the safety of laborers going to and from the points of the actual work’ ” (Mazzu v Benderson Dev. Co., 224 AD2d 1009, 1011, citing Nagel v Metzger, 103 AD2d 1).
The violation of a specific command of section 241 (6), and regulations promulgated pursuant to its authority, is some evidence of negligence (Long v Forest-Fehlhaber, 55 NY2d 154). Therefore, the claim is subject to the contributory fault defense. A jury could find that walking into a dark room on a construction site was imprudent (cf. Tarrazi v 2025 Richmond Ave. Assocs., 260 AD2d 468, 469). Since an apportionment of fault remains to be resolved, summary judgment must be denied. We note, in passing, that the duty imposed by section 241 (6), while not absolute, is nondelegable. Hence, plaintiff need not prove that the owner or construction manager exercised supervision or control over the work site in order to recover on this claim (Ross v Curtis-Palmer, supra, at 502).
Accordingly, the plaintiff’s motion for summary judgment regarding his section 240 (1) claim is denied. His motion for summary judgment on section 241 (6) is granted to the extent that a violation of the statute and regulation has been established, subject to the contributory fault defense.
We turn to the motion by the owner and manager for summary judgment on their breach of contract causes of action against Welliver and Paolangeli Contractor. The form of contract chosen by Beacon required Paolangeli Contractor and Welliver to procure primary general liability and other policies of insurance which name the owner and construction manager as additional insureds. Specifically, article 12 of the contract requires both to provide insurance coverage for Cornell and Beacon as additional insureds “for the Subcontractor work.” Hence, the act or omission which gives rise to a claim covered by the additional insured endorsement must have occurred in the course of the subcontractor’s duties (Ceron v Rector, Church Wardens & Vestry Members of Trinity Church, 224 AD2d 475) or, at all events, in some substantial relation to the activities contemplated by the subcontractor’s duties (Clapper v County of Albany, 188 AD2d 774).
Paolangeli Contractor submits a copy of its policy showing that Cornell University and Beacon are additional insureds with respect to liability “arising out of your (i.e. Paolangeli) ongoing operations performed for that insured.” The insurance is primary and noncontributory. The certificate issued by the *564 carriers shows a “description of operations/locations” as: “All operations at Cornell University” and repeats the names of the owner and project manager as additional insureds. It would seem that Paolangeli Contractor has fulfilled its obligation.
Paolangeli Contractor argues, however, that the plaintiffs fall did not involve its duties under the contract. We reject that contention. Plaintiff left his immediate work site to follow an electrical lead to another part of the project in an effort to ascertain why energy was not flowing to equipment which was necessary to the work being performed by Paolangeli Contractor. There is no contrary evidence. Cornell and Beacon are entitled to summary judgment that the plaintiffs fall occurred in the course of the work performed by Paolangeli Contractor.
The insurance provided by Welliver also provides primary and noncontributory coverage for both owner and construction manager. The policy also covers only “your work” but this limitation is consistent with the contract form used by Beacon. The Cornell-Beacon argument, that the plaintiffs injury arose out of Welliver’s work because the concrete which formed the surfaces of the excavated space had been poured by Welliver, is not persuasive. The plaintiffs fall was not caused, in whole or in part, by any act or omission of Welliver in relation to the concrete. Hence, the injury did not arise out of “your (i.e. Welliver’s) work” unless the Welliver work also included a duty to safeguard the opening in some way.
Welliver argues that, since the plaintiff was injured in the course of his work for Paolangeli Contractor, it had no duty to obtain insurance to cover such a claim. In support of that position, Welliver cites provisions in its contract which assign the installation of temporary lighting to another subcontractor (exhibit B, attached to affidavit in opposition to cross motion of Beacon) and excludes “barricades and lights” from Welliver’s work. Extrinsic evidence will be needed to resolve the issue. It is possible to argue, for instance, that the exclusionary language regarding barricades applies only to perimeter fences and not to openings in floors which Welliver participated in forming.
The mere fact that the additional insured endorsement obtained by Welliver does not specifically name Cornell and Beacon is not a breach of contract since the endorsement applies to “any person or organization you [Welliver] are required by written contract to include as an insured.” There is no doubt that a written contract requires that Cornell and Beacon be named as additional insureds and that Welliver’s endorsement covers both.
*565 Welliver’s insurer is not a party and its possible liability to Cornell-Beacon is not presently at issue. In any event, the duty of Welliver is defined by its contract with Beacon and not by the terms of the insurance policy which Welliver obtained in an effort to satisfy the requirements of that contract. Consequently, the Welliver argument, that Beacon’s remedy should be found in a declaratory judgment action against the insurer, is an errant missile which strikes well wide of the mark.
To conclude, we recognize that the additional insured requirement, imposed by Beacon upon both Paolangeli Contractor and Welliver, does not violate section 5-322.1 of the General Obligations Law, even if the owner and construction manager are eventually assigned a portion of fault for plaintiff’s injury (Kinney v Lisk Co., 76 NY2d 215, 218-219; Charter Oak Fire Ins. Co. v Trustees of Columbia Univ., 198 AD2d 134). Moreover, any breach of the insurance requirement would subject the promisors to such damages as may be sustained by the promisees due to the absence of such insurance (Kinney v Lisk Co., 76 NY2d 215, supra). Presently, however, we find that both Paolangeli Contractor and Welliver have fulfilled their contractual duties to provide additional insured coverage for the owner and manager with policies that are primary and noncontributory.
Accordingly, the cross motion for summary judgment against the two subcontractors for breach of contract must be denied. However, cross claimants are entitled to a determination that the plaintiff’s injury arose out of work assigned to Paolangeli Contractor. It remains to be seen whether Paolangeli will perform its contractual duty in light of this determination. Needless to add, the court will be available to respond to any such failure. The cross motion against Welliver is denied without prejudice. A question of fact exists as to whether the contract excludes Welliver from any role in providing lights or barricades in the basement room where plaintiff fell and was injured. If later evidence demonstrates that the plaintiff’s fall and injuries did not arise out of the activities contemplated by the Welliver subcontract (whether or not the liability is due to Welliver’s own conduct) the motion may be renewed (Clapper v County of Albany, supra, at 776).