## ROYAL INDEMNITY COMPANY *v.* TERRA FIRMA, INC., ET AL.*

Superior Court, Complex Litigation Docket at Middletown
File No. MMX-04-CV-05-4005063S

Memorandum filed July 25, 2006

* Affirmed. *Royal Indemnity Co.* v. *Terra Firma, Inc.,* 287 Conn. 183, 947 A.2d 913 (2008).

*Thomas C. Clark* and *Celeste M. Butera*, pro hac vice, for the plaintiff.

*David P. Condon*, for the named defendant.

*S. Dwight Stephens*, pro hac vice, for the defendant Konover Construction Corporation.

*R. Cornelius Danaher* and *Calum B. Anderson*, for the defendant United States Fire Insurance Company.

BEACH, J. The principal issue in this matter is whether the defendant Konover Construction Corporation (Konover), the general contractor for a construction project, is entitled to coverage as an "additional insured" under a policy procured by Soneco/Northeastern, Inc. (Soneco),[1] a subcontractor, pursuant to a construction agreement. All parties, with the exception of Soneco,[2] have moved for partial summary judgment as to the coverage issue and have submitted voluminous materials advancing their positions. I agree that there is no genuine issue of fact and that partial summary judgment as to coverage ought to enter. The question, of course, is, in whose favor?

On September 30, 1998, Konover, the general contractor for construction of a BJ's Wholesale Club in Willimantic, entered into a subcontract with Soneco under which Soneco was to perform site work, including excavation. Two clauses of that contract are germane to the

---

[1] By virtue of business activity not relevant here, the entity now known as Terra Firma, Inc., stands in the shoes of Soneco, which was the contracting entity during the relevant times in question.

[2] Soneco has submitted materials in support of Konover's motion for partial summary judgment, urging that coverage exists for Konover.

resolution of the current dispute. An indemnification and hold harmless clause provided that Soneco would indemnify Konover and hold it harmless for damages caused in whole or in part by the negligence of Soneco. A separate clause required Soneco to procure, inter alia, general liability insurance in the amount of not less than $1 million and to name Konover as an additional insured. Soneco obtained such insurance in the amount of $1 million per occurrence and $2 million total from the plaintiff, Royal Indemnity Company (Royal Indemnity), and excess insurance from the third party defendant, United States Fire Insurance Company (United States Fire). The clauses will be examined in more detail later in this opinion.

On October 30, 1998, during the effective dates of the Royal Indemnity and the United States Fire policies, two employees of Soneco, Richard Archambault and Dubie Sowell, were injured on the job. They subsequently brought personal injury actions against Soneco and Konover. Archambault alleged in his complaint that Konover was negligent because, inter alia, it failed to provide "cave-in" protection; failed to ensure safe working conditions in breach of its nondelegable duty; failed to inspect the work site properly; failed to supervise independent contractors and their employees properly; and failed to enforce compliance with applicable regulations. Sowell's allegations were substantially similar.

Both Sowell and Archambault included claims against Soneco. Summary judgment was rendered in favor of Soneco in both actions in 2001 on the ground that there was no evidence of any intentional conduct or knowledge by the employer that injuries were "substantially certain" to occur. Workers' compensation was, then, the exclusive remedy available to the employees with respect to Soneco.

The cases against Konover were consolidated and wended their way toward trial. Shortly before trial, counsel for Sowell and Archambault submitted a motion in limine seeking to exclude evidence of negligence on the part of Soneco. Relying primarily on *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 776–77, 610 A.2d 1277 (1992), the trial court excluded evidence of Soneco's negligence. The court did, however, allow evidence of the conduct of Soneco and its duties and obligations. After receiving notice of this ruling, but during trial of the case, Royal Indemnity disclaimed both the duty to indemnify and the duty to defend, claiming that, because Sowell and Archambault could recover only as to negligence on the part of Konover, Konover could not be an additional insured under the terms of the policy. Despite the disclaimer, defense counsel provided by Royal Indemnity continued to represent Konover. United States Fire, the excess carrier, apparently adopted the same position as Royal Indemnity.

The trial judge submitted the case to the jury on the theory that Konover had a nondelegable duty to provide a reasonably safe workplace and recited essentially the allegations of negligence recited previously in reference to the claims of Sowell and Archambault. The jury returned verdicts in favor of Archambault in the amount of $3,450,000, and in favor of Sowell in the amount of $2,833,000. The underlying cases are currently being appealed.

Royal Indemnity has brought this action against Soneco and Konover seeking relief, including a declaratory judgment that Konover was not an additional insured under Royal Indemnity's policy under the circumstances of this case, and that Royal Indemnity was not required to provide a defense after its notice to that effect. United States Fire has been impleaded. Konover seeks declaratory judgments, by counterclaim and third

party complaint, to the effect that it indeed was an additional insured under both the Royal Indemnity policy and the United States Fire policy. Soneco has joined in Konover's position and has submitted briefing material in support of Konover. Additionally, Royal Indemnity has moved to strike those counts of Konover's counterclaim alleging bad faith conduct and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. All parties have now moved for summary judgment in their favor as to the declaratory judgment counts.

"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002); Practice Book § 17-49. The party moving for summary judgment bears the burden of proving the absence of a genuine dispute as to any material fact, and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. "Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 74 (1996). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 373 n.7, 742 A.2d 753 (2000); *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). "In

deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 796 A.2d 730 (2001); *Serrano* v. *Burns*, 248 Conn. 419, 424, 727 A.2d 1276 (1999); *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 482, 784 A.2d 1024 (2000). In Connecticut, "[a] trial court should direct a verdict for a defendant if, viewing the evidence in the light most favorable to the plaintiff, [the trier of fact] could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail." (Internal quotation marks omitted.) *Colombo* v. *Stop & Shop Supermarket Co.*, 67 Conn. App. 62, 64, 787 A.2d 5 (2001), cert. denied, 259 Conn. 912, 789 A.2d 993 (2002).

As mentioned previously, the contract between Konover and Soneco contained an indemnification and hold harmless clause pursuant to which Soneco agreed to indemnify Konover and hold it harmless for any damages Konover should incur for Soneco's negligence. The "Subcontractor's Insurance" clause contained in that contract provided that prior to the work commencing, Soneco was to "procure for the Subcontractor's Work and maintain in force . . . Comprehensive General Liability Insurance and all insurance required of the Contractor under the contract Document"; that "the Contractor and the Owner(s) shall be named as additional insured on each of these policies except for Workers' Compensation"; and that the limits of the comprehensive general liability policy was to be "written with limits of liability not less than" $1 million for each occurrence and $1 million aggregate.

The language of the Royal Indemnity policy issued to Soneco in satisfaction of its contractual obligation to Konover is critical and provides in relevant part:

"ADDITIONAL INSUREDS—BY CONTRACT, AGREEMENT OR PERMIT

"Under SECTION II—WHO IS AN INSURED, paragraph 5. is added as follows:

"5. Each of the following is also an insured:

"[a] Any person or organization you are required by a written contract, agreement or permit to name as an insured but only with respect to liability arising out of:

"1. 'your work' performed for that insured at the location designated in the contract, agreement, or permit; or

"2. premises owned or used by you."

Pursuant to paragraph nineteen of the definition section of the Royal Indemnity policy, " 'Your work' means:

"a. Work or operations performed by you or on your behalf; and

"b. Materials, parts or equipment furnished in connection with such work or operations."

The language in the United States Fire policy is similar and provides in relevant part: "The term 'Insured' means the 'Named Insured' and . . .

"8. any person or organization included as an insured in the 'Underlying Insurance,' or

"9. at your option, any person or organization . . . included as an additional insured in the 'Underlying Insurance,' but only with respect to liability arising out of 'Your Work,' 'Your Product,' or property owned or used by you."

Pursuant to the definition section of the United States Fire policy, " 'Your Work' means:

"1. work or operations performed by you or on your behalf; and

"2. materials, parts or equipment furnished in connection with such work or operations."

The fundamental position of Royal Indemnity and United States Fire is that for the purpose of the actions brought by Archambault and Sowell, Konover is not an additional insured because its liability did not arise out of Soneco's work. The trial court excluded from the jury's consideration any claim that Soneco, the named insured, was negligent, and instructed the jury as to various allegations that Konover was negligent. Liability, then, according to Royal Indemnity and United States Fire, did not arise out of Soneco's work but, rather, out of Konover's work. Royal Indemnity and United States Fire argue that their position is buttressed by the policy expressed in General Statutes § 52-572k, which prohibits language in construction contracts that requires a subcontractor to indemnify a general contractor for the contractor's own negligence. Konover, supported by Soneco, argues to the contrary. The trench that collapsed was undeniably Soneco's work, in the sense that it was part of what Soneco obligated itself to do pursuant to the contract. The liability created by the underlying actions arose, then, out of the work of Soneco. Enforcing the "additional insured" clause does not run afoul of § 52-572k because Soneco is not required itself to indemnify Konover; rather, Soneco is obligated to procure insurance protecting Konover from liability arising out of that portion of the overall project that was to be performed by Soneco. Neither argument is foolish, and both were professionally and persuasively presented.

The outcome is largely informed by the clause in the policies referring to additional insureds. The considerations applicable to the construction of language in insurance policies are well established.

"We begin by setting forth the well settled standard of review for interpreting insurance contracts. [C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002). It is the function of the court to construe the provisions of the contract of insurance. . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . . . *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 351–52, 773 A.2d 906 (2001)." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 462–63, 876 A.2d 1139 (2005).

The duty to defend is similarly well defined, at least in terms of black letter law. "In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the

complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 40–41. If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured. . . . *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000).

"This court has concluded consistently that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless. . . . *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 139, 267 A.2d 660 (1970); see also *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 647, 679 A.2d 929 (1996). Further, [i]t is well established . . . that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. . . . *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 352. An insurer, therefore, is not excused from its duty to defend merely because the underlying complaint does not specify the connection between the stated cause of action and the policy coverage. Thus, the relevant question is whether the party claiming coverage is an insured party in the capacity in which he was sued." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, supra, 274 Conn. 463–64.

The search for the intent of the parties begins and frequently ends with the language of the policy. If the language is clear and unambiguous, its plain meaning is to be applied. *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 600–601, 840 A.2d 1158 (2004); *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 176, 713 A.2d 1269 (1998). The determinative facts are not disputed in the case at hand. Konover quite clearly qualifies as an additional insured under the policies because Soneco was contractually required to name Konover as an additional insured.[3] The principal dispute is whether Konover is covered for the loss in issue. Royal Indemnity and United States Fire maintain that because the language extends coverage for liability arising out of Soneco's work, there is no coverage for Konover where Konover's liability could arise only from its own negligence. If Soneco's "work" is defined to be only its own actions, and "arising out of" given a narrow causal construction, there is plausibility to that argument.

It seems quite apparent to me, however, that the premises underlying the proposition are faulty. Soneco's "work" as defined in the policy is "[w]ork or operations performed by you . . . ." The trenching operation was part of Soneco's "work," which it performed. The injuries of Sowell and Archambault clearly occurred in the performance of that work. Konover's liability arose not by virtue of its broad role as general contractor for the entire project but rather in its far

---

[3] United States Fire has argued that it is not quite so clear as to the excess policy, because there was no definite limit of coverage required in the contract between Konover and Soneco other than "not less than" $1 million for general liability. It is quite clear, however, that Soneco was required to name Konover as an additional insured and that the amount obtained is consistent with the contract language. Further, the "additional insured" language in the United States Fire policy is quite broad. It includes as an additional insured any entity that is included as an additional insured under the underlying insurance. Even if there is an ambiguity, it is resolved, as required by the case law stated previously, in favor of coverage.

more narrow role as general contractor for Soneco's work. In that sense, Konover's liability "arose out of" the "work" of Soneco. The generally broad, though not unlimited, interpretation of the term "arose out of" in the insurance context was discussed at some length in *QSP, Inc.*, wherein the Supreme Court stated: "The relevant policy language covers personal injury and advertising injury arising out of defamation, disparagement, malicious prosecution or unfair competition. The trial court recognized that the term arising out of is very broad, and that it is the phrase that provides the causal connection between the injury and the offense in both the [insurance] policies. [I]t is generally understood that for liability for an accident or an injury to be said to arise out of [an occurrence or offense], it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to [that occurrence or offense], in order to meet the requirement that there be a causal relationship between the accident or injury and [that occurrence or offense]. *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975), and cases cited therein. To arise out of means to originate from a specified source. Webster's Third New International Dictionary (1961); see also Black's Law Dictionary (7th Ed. 1999) (defining arise as 1. [t]o originate; to stem [from] . . . 2. [t]o result [from]). The phrase arising out of is usually interpreted as indicat[ing] a causal connection. . . . *Coregis Ins. Co.* v. *American Health Foundation*, United States Court of Appeals, Docket No. 99-9300 (2d Cir. February 14, 2001); see also *McGinniss* v. *Employers Reinsurance Corp.*, 648 F. Sup. 1263, 1267 (S.D.N.Y. 1986). Simply because we recognize, however, the breadth of the term arising out of and often interpret coverage ambiguities in favor of the insured does not mean that we will obligate an insurer to extend coverage based . . . [upon] a reading of the complaint that is

. . . conceivable but tortured and unreasonable. *New York* v. *AMRO Realty Corp.*, 936 F.2d 1420, 1428 (2d Cir. 1991)." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 373–74.

In a virtually identical context, Judge Shortall recently held that coverage existed in *Manchester* v. *Vermont Mutual Ins. Co.*, Superior Court, judicial district of New Britain, Docket No. CV-04-4004859 (January 3, 2006) (40 Conn. L. Rptr. 542). The town was an additional insured under a policy issued to an independent contractor, and negligence of an employee of the contractor allegedly injured a plaintiff in an underlying action. Id. Adhering to the broad nature of the term "arising out of" in the context of coverage disputes, Judge Shortall held that for the purpose of coverage the town's liability "arose out of" the operations of the contractor. Id., 544. This result is consistent with the majority rule in other jurisdictions. See, e.g., *Tishman Interiors Corp.* v. *Fireman's Fund Ins. Co.*, 236 App. Div. 2d 385, 653 N.Y.S.2d 367 (1997).[4]

Section 52-572k does not change the result. The statute does prohibit clauses purporting to require subcontractors to indemnify and hold harmless general contractors for the general contractor's negligence. The statute says nothing about requiring general contractors to be included as additional insureds; indeed, § 52-572k (a) specifically provides that "this section shall not affect the validity of any insurance contract . . . ." In a somewhat different context, the Appellate Court indicated that § 52-572k has a somewhat narrow target, stating that the "arrangement . . . to share the risks and the obligation of insuring the . . . site does not fit the description of an agreement to hold harmless or

---

[4] Royal Indemnity has cited to the minority of jurisdictions, notably Ohio, which appear to hold to the contrary.

to indemnify." *Best Friends Pet Care, Inc.* v. *Design Learned, Inc.*, 77 Conn. App. 167, 175, 823 A.2d 329 (2003). More precisely on point is *Kinney* v. *G.W. Lisk Co.*, 76 N.Y.2d 215, 556 N.E.2d 1090, 557 N.Y.S.2d 283 (1990).

Although the result is governed by what I take to be the plain language of the policy, I should address a primary consideration advanced especially by United States Fire. It urges that a provision which obligates a third party to pay for the consequences of one's negligence does not comport with sound moral policy. Among many responses to this position are the myriad situations wherein just that arrangement occurs, such as where one drives a car owned by another, or where one negligently injures a coemployee. Presumably, the cost of additional insurance is predictable and simply increases in some increment the amount of a subcontractor's bid; the proscribed conduct of requiring indemnification and hold harmless agreements, on the other hand, could have catastrophic and unpredictable consequences to a subcontractor. I do not find a violation of public policy in the practice of spreading risk to an insurer by requiring the inclusion of a general contractor as an additional insured, especially where the insurer's risk is limited to losses arising from the named insured's work.

I find, then, that Konover's motion for partial summary judgment is granted and Royal Indemnity's motion for summary judgment is denied. Judgment shall enter in Konover's favor on Royal Indemnity's claim for a declaratory judgment and on Konover's first and second counts of its counterclaim, as well as on Konover's third party complaint against United States Fire.

The remaining issue is Royal Indemnity's motion to strike the fourth and fifth counts of Konover's counterclaim, which allege bad faith and violations of CUTPA. Suffice it to say that in deciding a motion to strike on

the ground of whether a claim has been stated on which relief may be granted, the court must confine itself to the allegations of the pleading, both express and necessarily implied, and must accept as true those allegations. See, e.g., *Gazo* v. *Stamford*, 255 Conn. 245, 260, 765 A.2d 505 (2001); see also *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 348, 576 A.2d 149 (1990). The pleadings will be construed in favor of the pleader if there is any ambiguity as to whether relief could be granted under the pleading. See *Doe* v. *Marselle*, 38 Conn. App. 360, 364–65, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996). Conclusions that are pleaded, however, need not be accepted as true for the purpose of ruling on motions to strike. *Doe* v. *Yale University*, 252 Conn. 641, 694, 748 A.2d 834 (2000) (*Sullivan, J.*, concurring and dissenting).

I find that Konover may well have difficulty prevailing, in light of cases such as *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995), but it also is apparent that the arguments advanced by Royal Indemnity are overwhelmingly dependent on factual matters outside the pleadings. The motion to strike is accordingly denied.