Thomas GESUALDI, Louis Bisignano, Anthony Pirozzi, Anthony D'Aquila, Michael O'Toole, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund, Plaintiffs,

v.

FORTUNATA CARTING INC., Defendant.

No. 12–CV–514 (WFK)(MDG).

United States District Court, E.D. New York.

Signed March 19, 2014.

Michael Seth Adler, Cohen, Weiss and Simon LLP, New York, NY, for Plaintiffs.

## ORDER

WILLIAM F. KUNTZ, II, District Judge.

This action was filed on February 3, 2012. (Dkt. 1). On April 12, 2012, Plaintiffs brought a motion for default judgment. (Dkt. 7). This Court subsequently granted Plaintiffs' motion and referred the issue of damages to United States Magistrate Judge Marilyn Go for a Report and Recommendation. (Dkt. Entry re: Dkt. 7, entered 5/17/12).

On February 4, 2014, Magistrate Judge Go filed a Report and Recommendation recommending "that the Court award ... judgment against defendant Fortunata Carting Inc. in the amount of $382,-381.41[.]" (Dkt. 24 at 42–43). The Report and Recommendation recounted the par-

ties' history; analyzed Plaintiffs' damages submissions; calculated the appropriate interest, fees, and costs; and ultimately concluded that Plaintiffs were entitled to $382,381.41 in damages. (*Id.*). Objections to the Report and Recommendation were required to be filed by February 21, 2014. (*Id.* at 43); Fed.R.Civ.P. 72(b)(2). No objections have been filed and the time to do so has passed.

█ The Court reviews a Report and Recommendation for clear error when no objections have been filed, *see Covey v. Simonton*, 481 F.Supp.2d 224, 226 (E.D.N.Y.2007) (Garaufis, J.), and we find no such error here. The Court therefore adopts the Decision of Magistrate Judge Go in its entirety. Accordingly, it is hereby ordered that Plaintiffs be awarded damages in accordance with the Report and Recommendation. (Dkt. 24),

The Clerk of Court is directed to enter judgment in the amount of $382,381.41 and close the case.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

GO, United States Magistrate Judge:

Plaintiffs brought this action against defendant Fortunata Carting Inc. ("Fortunata") to recover unpaid benefit contributions pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act of 1980, 29 U.S.C. §§ 1381 *et seq.* ("MPPAA"), and the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). The Honorable William F. Kuntz, II granted plaintiffs' motion for default judgment and referred to me for report and recommendation the amount of damages to be awarded. *See* electronic order dated May 17, 2012.

## PRIOR PROCEEDINGS

Plaintiffs commenced this action on February 3, 2012 to collect sums owed by defendant for contributions and other sums owed under ERISA and the LMRA. After entry of default against defendant, plaintiffs moved for default judgment, which Judge Kuntz granted and referred to me to determine damages at a hearing held on May 16, 2012. This Court subsequently held two hearings and plaintiffs supplemented their default submissions, as directed. Defendant has neither filed an answer nor responded to any of plaintiffs' submissions in support of their motion for default judgment.

Plaintiffs brought an earlier action on July 14, 2009 to collect unpaid contributions. *See Gesualdi and Finkel v. Fortunata Carting, Inc. and Mascia*, 09–cv–3001 (the "Prior Action"). Although the defendants did not appear in the action, plaintiffs filed a letter dated January 15, 2010 to notify the Court that the parties had reached an agreement to settle. *See* ct. doc. 10 in 09–cv–3001. In the January 15th letter, which was signed by counsel for plaintiffs and Vincent Mascia, as President of Fortunata, the defendants agreed to pay $57,000 in satisfaction of contributions owed for the periods of November 2008, January 2009 through August 2009, October 2009 and the weekly periods of November 20, 2009 and November 27, 2009. *Id.* The defendants also agreed in the letter agreement that plaintiffs would be entitled to conduct an audit for these periods and collect additional contributions due and owing for those periods. *Id.* Plaintiffs subsequently filed a notice of voluntary dismissal. *See* ct. doc. 11 in 09–cv–3001.

## FACTUAL BACKGROUND

The pertinent facts are undisputed and are set forth in the Complaint ("Compl.")

(ct. doc. 1), the Declaration of Theresa Cody ("Cody Decl.") (ct. doc. 8), the Supplemental Declaration of Theresa Cody ("Cody Supp. Decl.") (ct. doc. 18), the Declaration of Angelos Poulos ("Poulos Decl.") (ct. doc. 9), the Declaration of Michael S. Adler ("Adler Decl.") (ct. doc. 10), and the Supplemental Declaration of Michael S. Adler ("Adler Supp. Decl.") (ct. doc. 23).

Plaintiffs are the trustees of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds"), which are multi-employer benefit plans within the meaning of ERISA. *See* Compl. at ¶¶ 3, 4. The Funds are governed by a Restated Agreement and Declaration of Trust, effective as of July 1, 1999, as amended (the "Trust Agreement"). Cody Decl. at ¶ 8 and Exh. B.

Defendant is a signatory to the New York City Heavy Construction & Excavating Contract (the "CBA") with the Building Material Teamsters Local 282, International Brotherhood of Teamsters ("the Union") covering the period from July 1, 2006 to June 30, 2009. *See* Compl. at ¶ 8. The CBA incorporates the Trust Agreement governing the Funds and provides that the Union and employers that are signatories to the CBA are deemed to be parties and subject to the Trust Agreement. *Id.* at ¶¶ 5, 9; Cody Decl., Exh. B (CBA at § 13(G)).

Under the CBA, employers are required to submit remittance reports and pay benefit contributions to the Funds according to rate schedules set forth in the CBA for all work performed by their employees. Compl. at ¶ 8; CBA at § 13. An employer is also required to make contributions on behalf of the employees of third-party trucking companies who do covered work. Cody Decl. at ¶ 22; CBA at § 7. Employers that do not post a surety bond, as here, are required to submit contributions on a weekly basis. Cody Decl. at ¶ 17; CBA at § 14. Employers are also required to submit to periodic audits of their books and records to verify that all required contributions have been made to the Funds. Compl. at ¶ 16; Cody Decl., Exh. A (Trust Agreement at art. IX, § 1(d)).

The Trust Agreement provides that if an employer does not sign a current collective bargaining agreement, the employer remains obligated to make timely contributions to the Funds unless the employer gives notice that the employer does not intend to sign a new collective bargaining agreement at least 60 days prior to expiration of the most recent collective bargaining agreement. Trust Agreement at art. IX, § 1(a). If the employer makes contributions at the rates provided for in the current collective bargaining agreement, the employer is deemed to be a party to that collective bargaining agreement. *Id.* Defendant failed to notify the Trustees of its intent not to sign a new collective bargaining agreement within 60 days of the expiration of the 2006–2009 agreement and continued to submit remittance reports in 2010 and 2011 to the Funds using the rates prescribed by the 2009–2013 CBA. *See* Cody Decl. at ¶¶ 12, 13, Exh. D (remittance reports); Adler Supp. Decl., Exh. C (remittance reports). Each remittance report was signed by a representative of defendant and included a statement immediately above the signature line that: "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE CURRENT LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEES." *See* Cody Decl. at ¶ 14, Exh. D; Adler Supp. Decl., Exh. C.

In their motion for default judgment, plaintiffs seek damages for unpaid contributions which they calculate in three different ways: using the amounts reflected in remittance reports submitted by defendant; using a formula provided in the Trust Agreement for certain periods for which no remittance reports were submitted; or relying on the results of an audit conducted. Plaintiffs also seek recoupment of benefits paid to Vincent Mascia; amounts not paid in accordance with the settlement of the Prior Action; and interest, liquidated damages and attorneys' fees, including interest on contributions that were not timely paid.

Specifically, plaintiffs allege that although defendant submitted remittance reports for January 2010, February 2010 and the weeks ending July 30, 2010, October 29, 2010, November 5, 2010, April 8, 2011, April 15, 2011 and April 29, 2011, it failed to pay the contributions owed for these periods. Cody Decl. at ¶ 42. Defendant also submitted remittance reports for the weeks ending December 25, 2009 and January 1, 2010, but was late in paying contributions owed. *Id.* at ¶ 47.

In addition, defendant neither submitted remittance reports, nor paid any contributions for the weeks ending March 25, 2011, December 16, 2011, December 23, 2011, December 30, 2011 and the months of January 2012 and February 2012. *Id.* at ¶ 43; Adler Decl. at ¶ 27. By letter to defendant dated October 4, 2011, plaintiff's counsel stated that a remittance report was not submitted for the week ending March 25, 2011. *See* Adler Decl., Exh. C. By letter to defendant dated January 11, 2012, plaintiff's counsel stated that defendant had not provided all documentation necessary to conduct an audit and that if the documentation was not promptly provided, the Funds would estimate the contributions due. *Id.*

Plaintiffs also seek the remaining balance due on an agreement to settle the Prior Action in which the defendants agreed to pay $57,000 over the course of 19 months, commencing on January 30, 2010. *Id.* at ¶¶ 33–35. The settlement agreement provides that if defendant defaults on its obligations and fails to cure within 7 days, plaintiffs are entitled to judgment on the amount due, plus interest and additional attorneys' fees, less any payments made. *Id.* at ¶ 37; Cody Decl., Exh. E. Defendant failed to pay any of the installment payments due from August 30, 2010 through July 30, 2011. Adler Decl. at ¶ 38.

Plaintiffs also performed an audit and allege based on audit results that defendant failed to report hours and pay all contributions due for the period from July 24, 2008 through June 25, 2010 resulting in a balance due of $83,360.97. *Id.* at ¶ 27. Among the hours that were found to be unreported were those for Fortunata's drivers as reflected in its own payroll records and the hours of work performed by subcontractors' drivers based on Fortunata's subcontractor reports. Poulos Decl. at ¶ 23.

The auditors also discovered that Fortunata submitted remittance reports from December 1, 2008 to June 30, 2009 reflecting that Vincent Mascia was a covered employee. However, Mr. Mascia did not qualify for benefits under the terms of the CBA as a 100% owner of Fortunata. *Id.* at ¶¶ 49–55. As a result, plaintiff seeks to recover $7,197.95 for benefits the Funds paid on Mascia's behalf to which he was not entitled. *Id.* at ¶ 57.

## DISCUSSION

### I. *Default Judgment Standard*

A default constitutes an admission of all well-pleaded factual allegations in the

complaint, except for those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). Only "in very narrow, exceptional circumstances" may a court find an allegation not "well pleaded." *TWA, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in the complaint violated the laws upon which the claim is based and caused injuries as alleged. *See Greyhound*, 973 F.2d at 159. The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.*

The court must also ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculations, Fed.R.Civ.P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir.1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain*, 653 F.2d at 65.

In granting plaintiffs' motion for default judgment, the issue of defendant's liability has been determined. However, this Court briefly discusses the claims alleged in the Complaint to clarify what damages plaintiffs are entitled to recover.

## II. *Claims*

Plaintiffs assert as their first claim for relief a claim under Section 515 of ERISA, 29 U.S.C. § 1145, arising from defendant's failure to pay contributions, interest, liquidated damages, attorneys' fees and costs. Fortunata was required by the CBA to comply with the terms of the Trust Agreement, to submit to an audit, to pay fringe benefit contributions and to submit remittance reports to the Funds on a timely basis. Since defendant failed to submit all remittance reports required and pay certain contributions due, defendant is liable to the Funds under ERISA.

Although the 2006 CBA expired on July 31, 2009, defendant continued to be obligated to make contributions and became bound to the terms of the 2009 CBA by its course of conduct. Since defendant failed to notify the Union that it did not intend to sign a new agreement, it was required to continue to make contributions according to the 2006 CBA. *See Mason Tenders Dist. Council of Greater N.Y. v. Concore Equipment, Inc.*, 2011 WL 5548912, at *14 (S.D.N.Y.2011) (enforcing evergreen clause); *Mason Tenders Dist. Council Welfare Fund v. Stevenson Contracting Corp.*, 2008 WL 3155122, at *2 (E.D.N.Y.2008). Moreover, defendant submitted to an audit, submitted remittance reports and paid contributions to the Funds for some periods in 2010 and 2011 reflecting the rates established in the 2009 CBA.[1] *See* Cody Decl., Exh. D. Thus, by the terms of the 2006 CBA and by its course of conduct, defendant manifested an intent to be bound by the 2009 CBA. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 354–55 (2d Cir.1999); *Gariup v. Birchler*, 777 F.2d 370, 374–76 (7th Cir.1985) (em-

---

1. Defendant failed to submit remittance reports and/or pay contributions for some of the weeks during that time period. *See* Cody Decl. at ¶¶ 42, 43; Adler Decl. at ¶ 27.

ployer paid wages and contributions listed in CBA for 1½ years).

Plaintiffs also seek damages relating to two claims that do not arise under ERISA. First, plaintiffs seek to assert a claim sounding in contract or fraud for recoupment of welfare benefits paid to Vincent Mascia, who plaintiffs claim was fraudulently reported as an employee of Fortunata, when he was actually an ineligible owner. During the audit, the Funds determined that Mascia was not eligible to receive benefits because the welfare benefit plan provides that a 100% owner of an employer who fails to work a certain number of hours is ineligible to receive benefits from the Fund. *See* Cody Decl., Exh. J (Summary Plan Description). Although Mascia did not meet the requirements to receive benefits, he was reported on remittance reports submitted by Fortunata and received benefits from the Fund.

█ To the extent that plaintiffs' allegations that defendant breached its obligations under the CBA and Trust Agreement can be construed to include a claim arising from an obligation not to submit remittance reports or make payments on behalf of ineligible employees, defendant may be found liable to the Funds under the LMRA. Alternatively, to the extent plaintiff seeks recovery under a fraud theory, plaintiff has adequately stated a claim. The elements of common law fraud under New York law are: "1) a misrepresentation or material omission that was false and known to be false by defendant, 2) made for the purpose of inducing the other party to rely upon it, 3) justifiable reliance of the other party on the misrepresentation or material omission, and 4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir.2009). In light of the allegations that Fortunata falsely reported Mascia as a covered employee, this Court may reasonably infer that de-

fendant, through its sole owner, had the intent to cause the Funds to pay benefits for Mascia and that the Welfare Fund relied upon Fortunata's remittance reports in determining that Mascia was eligible for benefits and paying $7,197.95 in benefits on Mascia's behalf. Although such a claim would not fall within the Court's federal question jurisdiction, plaintiffs do allege in the complaint that the "Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1967 (sic)." Compl. at ¶ 1. However, plaintiffs do not explain in either the complaint or its default motion papers why such jurisdiction exists.

█ After consideration of the submissions, this Court recommends that this Court exercise supplemental jurisdiction over plaintiffs' claim for common law fraud. The courts are authorized to exercise supplemental jurisdiction over pendent state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). The claim for recoupment of the benefits paid to Mr. Mascia is closely related to the claim for contributions owed based on the audit conducted; plaintiffs, in fact, discovered this impropriety as a result of the audit and examination of the remittance reports and payroll records.

█ Likewise, plaintiffs' claim to collect payments due under the settlement of the Prior Action does not arise under ERISA. However, the settlement agreement between plaintiffs and defendant can fairly be characterized as a labor contract governed by the LMRA. *See Mason Tenders District Council of Greater N.Y. v. Concore Equip. Inc.*, 2013 WL 5303756, at *4–*5 (S.D.N.Y.2013); *see also United Mine Workers of Am. Dist. No. 5 v. Con-*

*solidation Coal Co.,* 666 F.2d 806, 809 (3d Cir.1981).

This Court is constrained to note that plaintiffs do not clearly plead this claim as a separate count or claim for relief in the complaint, nor do they state in their "Prayer for Relief" that they seek the unpaid amounts under the settlement. *See* Compl. at 12. However, plaintiffs make a number of specific allegations in the complaint that defendant failed to make the payments required under the settlement and submitted checks that were dishonored. *Id.* at ¶¶ 19–25. These allegations suffice to give fair notice of plaintiffs' claim for recovery of the defaulted settlement payments, even if not properly denominated as such. *See Jajeh v. Cty. of Cook,* 678 F.3d 560, 566–67 (7th Cir.2012) (defendant "had fair notice of the hostile-work environment claim; [plaintiff] was 'not required to plead with precision legal theories or detailed facts' ").

### III. *Damages Under ERISA*

Section 502(g)(2) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the [unpaid contributions], (D) reasonable attorney's fees and costs of the action...

29 U.S.C. § 1132(g)(2).

As explained in the supplemental declaration of Ms. Cody, although the time periods overlap for which the Funds seek unpaid contributions pursuant to the audit, breach of the settlement agreement and failure to pay contributions reflected in the remittance reports submitted, the amounts sought do not overlap. For example, if Fortunata underreported hours for a certain employee, plaintiff sought unpaid contributions revealed in the audit. If Fortunata submitted remittance reports but not contributions for a particular time period, those amounts are sought separately from the audit. Plaintiffs only seek contributions pursuant to the audit for hours not reflected in remittance reports submitted. Cody Supp. Decl. at ¶ 9. Similarly, if an employer reports hours but does not remit contributions for those hours, the audit would not reflect those hours as unpaid. *Id.* Amounts sought for breach of the settlement agreement are not also sought pursuant to the audit. *Id.* at ¶ 8. Thus, using this approach, plaintiffs have not sought duplicative damages for the various amounts sought under different methodologies.

### A. *Unpaid Amounts Reflected in Remittance Reports*

Plaintiffs seek to recover $38,203.63 for the periods for which defendant submitted remittance reports but failed to remit contributions to the Funds: January 2010, February 2010 and the weeks ending July 30, 2010, October 29, 2010, November 5, 2010, April 8, 2011, April 15, 2011, and April 29, 2011. Cody Decl. at ¶ 42, Exh. D. Having reviewed the remittance reports submitted, I find that plaintiffs slightly miscalculated the amount of contributions due. In addition to the mathematical errors made by plaintiffs, each of which were in the defendant's favor, plaintiffs seek contributions due for the week ending October 29, 2010 even though the remittance report submitted for that week indicates that the amount due was paid and lists the check number for the payments to each Fund. Cody Decl., Exh. D. In the absence of any explanation by plaintiff for this

discrepancy, I recommend denying damages for that week.

Based on my review, I recommend awarding $37,743.87 for the time periods set forth below:

| Week | Contributions Due |
| --- | --- |
| 1/8/10 | $ 4,884.14 |
| 1/15/10 | $ 4,884.14 |
| 1/22/10 | $ 5,430.40 |
| 1/29/10 | $ 3,148.99 |
| 2/5/10 | $ 5,783.85 |
| 2/12/10 | $ 2,088.61 |
| 2/12/10 | $ 257.06 |
| 2/19/10 | $ 2,586.68 |
| 2/26/10 | $ 2,570.60 |
| 7/30/10 | $ 1,110.80 |
| 11/5/10 | $ 833.10 |
| 4/8/11 | $ 1,110.80 |
| 4/15/11 | $ 555.40 |
| 4/29/11 | $ 2,499.30 |
| TOTAL | $37,743.87 |

### B. Unpaid Contributions in the Absence of Remittance Reports

Defendant did not submit remittance reports for the weeks ending April 30, 2010,[2] March 25, 2011, December 16, 2011, December 23, 2011, December 30, 2011 and the months of January 2012 and February 2012. *See* Cody Decl. at ¶ 48. In estimating the contributions due, plaintiffs utilize the formula contained in Article IX, Section 1(e) of the Trust Agreement by multiplying by 110% the largest number of hours reported in any of the 12 previous remittance reports submitted in which contributions were reflected as due to the

Funds. *See* Adler Supp. Decl. at ¶ 5. The Funds used the 820 hours reported to each Fund for the week of February 5, 2010 as the base week for calculating the unpaid contributions for all the weeks for which they seek estimated contributions. Using this formula, the Funds calculated unpaid contributions in the amount of $79,487.81. *See* Adler Decl. at ¶ 28.

However, the Funds rely on a strained interpretation of the Trust Agreement. The relevant provision of the agreement provides that the Trustees "may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the *previous twelve (12) reports submitted by the Employer* (hereinafter referred to as the base month)." Trust Agreement at art. IX, § 1(e) (emphasis added). Although the language of the Trust Agreement is premised on an employer submitting remittance reports on a monthly basis, rather than weekly, there is no reason for plaintiffs to stray from the express language of the agreement and attempt to exclude remittance reports where the employer reported no hours worked by covered employees. By order dated November 28, 2012, the Court directed plaintiffs to amend or supplement their submissions by either estimating the hours worked based on a report from the immediately preceding 12 reports submitted by defendant or explain why the agreement should be interpreted to support another method of calculating the estimated hours. Plaintiffs supplemented their submissions by recalculating the estimated contributions due based on the twelve remittance reports most recently submitted prior to the week at issue. According to plaintiffs' recalculation, $907.17 in contributions are due for the

2. Since the week ending April 30, 2010 is covered by the audit, the Funds separately seek recovery for contributions due for that week.

week ending March 25, 2011 based on the 24 hours reported on March 4, 2011. *See* Adler Supp. Decl. at ¶ 8. As to the other weeks for which no remittance report was submitted, there were no hours reported by the employer within the previous twelve reports submitted. Thus, plaintiffs are entitled to recover $907.17 in contributions for this time period.

### C. *Unpaid Contributions Detected By Audit*

Plaintiffs also seek unpaid contributions that were discovered as a result of an audit of defendant's books and records for the period from July 24, 2008 through June 25, 2010. In support of their calculations for contributions due, plaintiffs submitted audit reports and worksheets of Angelos Poulos as well as his declaration explaining the basis for the audit results. Mr. Poulos explained in his affidavit that he reviewed defendant's books and records, including: weekly payroll registers, quarterly payroll tax returns, W–2's, Form 1120's, subcontractor reports, bank statements and a database provided by the Funds containing shop steward reports and remittance reports. Poulos Decl. at ¶ 10. The delinquencies revealed by the audit were due to Fortunata's failure to pay contributions based on hours worked by its employees reflected in payroll records and shop steward reports and to pay contributions for trucking work performed by employees of third-party trucking companies. According to Mr. Poulos, the audit revealed that the defendant neither reported nor paid to the Funds contributions for 5,399.25 hours that appeared in its payroll records.[3] *Id.* at ¶ 18. In addition, a review of the shop

steward reports showed that there were 2,194 hours worked that were not reflected in Fortunata's payroll records. *Id.* at ¶ 21.

The audit also revealed that Fortunata hired outside truck firms without providing invoices to determine the amount these outside truck hires were paid. *Id.* at ¶ 23. In calculating unpaid contributions for such work, the Funds used an estimated rate of $90 per hour as the rate of pay for the work performed by outside truck hires to estimate the number of hours worked. *Id.* The auditor claims that $90 per hour is the prevailing rate in the industry for this type of work. *Id.* The Funds contend that Fortunata failed to report 6,063.75 hours for outside truck hires. In the absence of conflicting evidence, I find that the audit deficiency, which is based on examination of the defendant's records, provides a sufficient basis to support plaintiffs' claim for the amount due to the Funds for the period from July 24, 2008 through June 25, 2010. *See Fuchs v. Tara Gen. Contracting, Inc.*, 2009 WL 2922840, at *7 (E.D.N.Y.2009); *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612, at *10 (E.D.N.Y.2007). The amounts owed to each fund as reflected in Exhibit B to the Poulos Declaration are as follows: [4]

*Welfare Trust Fund:*

| | |
|---|---|
| 2,705.50 hours | $27,002.57 |
| *Pension Trust Fund:* | |
| 2,709.50 hours | $20,927.75 |
| *Annuity Trust Fund:* | |
| 2,797 hours | $25,599.54 |
| *Job Training Trust Fund:* | |
| 2,705.5 hours | $270.55 |
| *Vacation Trust Fund:* | |
| 2,739.5 hours | $ 9,560.56 |
| *Total Contributions Due:* | **$83,360.97** |

---

**3.** The total hours calculated by the audit include the combined total number of hours unreported to each Fund.

**4.** As discussed in the following section regarding interest, the "Interest Worksheet" at-

tached as Exhibit A to the Poulos Declaration contains several errors resulting in an over-inflation of the underreported hours, contributions due and interest.

### D. Recoupment of Benefits Paid for Mascia

As to the benefits paid for Mascia, the Funds claim that they are entitled to reimbursement in the amount of the benefits paid or $7,197.95. However, that amount should be offset by any contributions paid by Fortunata on Mascia's behalf to avoid a windfall to the Welfare Fund. Otherwise, the Welfare Fund will have collected contributions for the hours worked by Mascia without having to pay him benefits. According to the remittance reports, the Welfare Fund was due $1,911.76 in contributions for Mascia ($10.39 × 184 hours) for the relevant time period. *See* remittance reports submitted on September 11, 2012 (to be filed under seal). Thus, I recommend awarding the Welfare Fund only $5,286.19 for benefits paid on behalf of Mascia ($7,197.95–$1,911.76).

### E. Payments Owed Under Settlement Agreement

In the Settlement Agreement with Fortunata dated February 5, 2010, Fortunata acknowledged that it owed $67,852.25 for November 2008, January 2009 through August 2009, October 2009 and the weeks ending November 20, 2009 and November 27, 2009. Cody Decl., Exh. E. However, the Funds agreed to accept $57,000 as full settlement of the unpaid contributions for that time period, inclusive of interest, liquidated damages and attorneys' fees, which was to be paid in 19 monthly installments of $3,000 commencing on January 30, 2010 until paid in full. *Id.* Defendant remitted $21,000 of the settlement amount but failed to make payments due on August 30, 2010 through July 30, 2011, leaving a balance due of $36,000. Cody Decl. at ¶ 42, Exh. F. In addition, defendant submitted 3 checks which were returned to the Funds by the bank for insufficient funds. Cody Decl. at SI 44, Exh. G. Effective on March 1, 2006, the Trustees authorized the Funds to assess a $75.00 administrative fee per dishonored check. *See* Cody Decl., Exh. H. Therefore, the Funds are owed $36,225.00.

In sum, I respectfully recommend that this Court award Plaintiffs a total of $163,523.20 consisting of $38,651.04 in unpaid contributions, $36,225.00 under the settlement agreement for the Prior Action, $83,360.97 pursuant to the audit, and $5,286.19 for benefits wrongly paid to Mascia.

### F. Interest

"Interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of [the Internal Revenue Code]." 29 U.S.C. § 1132(g)(2)(E). Pursuant to an amendment to the Trust Agreement, the interest rate on unpaid contributions is 1.5% per month. *See* Cody Decl., Exh. A (Amendment to Restated Trust Agreement dated Oct. 28, 2003) (ct. doc. 8–1 at 62).

With respect to unpaid and late-paid contributions, plaintiffs calculated interest from the first day of the month that the contributions were due (one week after the end of the week during which the contributions were earned), as provided in the Trust Agreement, up to April 10, 2012, the date of plaintiffs' default submissions. Trust Agreement at art. IX, § 3.

#### 1. Interest on Unpaid Contributions

As to the weeks for which remittance reports were submitted but contributions were not paid, I recommend awarding interest at the rate of 18% per year. The amount of interest accrued through February 14, 2014 amounts to $26,543.86 and at a daily rate of $18.61 thereafter until the entry of judgment as set forth below:

| Week | Interest Accrual | Contributions Due | Days Late through 2/14/14 | Per Diem | Total |
|------|------------------|-------------------|---------------------------|----------|-------|
| 1/8/10 | 1/1/10 | $4,884.14 | 1,506 | 2.41 | $ 3,629.46 |
| 1/15/10 | 1/1/10 | $ 4,884.14 | 1,506 | 2.41 | $ 3,629.46 |
| 1/22/10 | 1/1/10 | $ 5,430.40 | 1,506 | 2.68 | $ 4,036.08 |
| 1/29/10 | 2/1/10 | $ 3,148.99 | 1,475 | 1.55 | $ 2,286.25 |
| 2/5/10 | 2/1/10 | $ 5,783.85 | 1,475 | 2.85 | $ 4,203.75 |
| 2/12/10 | 2/1/10 | $ 2,088.61 | 1,475 | 1.03 | $ 1,519.25 |
| 2/12/10 | 2/1/10 | $ 257.06 | 1,475 | .13 | $ 191.75 |
| 2/19/10 | 2/1/10 | $ 2,586.68 | 1,475 | 1.28 | $ 1,888.00 |
| 2/26/10 | 3/1/10 | $ 2,570.60 | 1,447 | 1.27 | $ 1,837.69 |
| 7/30/10 | 8/1/10 | $ 1,110.80 | 1,294 | .55 | $ 711.70 |
| 11/5/10 | 11/1/10 | $ 833.10 | 1,202 | .41 | $ 492.82 |
| 4/8/11 | 4/1/11 | $ 1,110.80 | 1,051 | .55 | $ 578.05 |
| 4/15/11 | 4/1/11 | $ 555.40 | 1,051 | .27 | $ 283.77 |
| 4/29/11 | 5/1/11 | $ 2,499.30 | 1,021 | 1.23 | $ 1,255.83 |
| TOTAL | | $37,743.87 | | | $ 26,543.86 |

Next, interest on $907.17 in estimated unpaid contributions for March 25, 2011, the one period I recommended that damages be awarded for which no remittance reports were submitted, amounts to $472.95 through February 14, 2014 (1,051 days * $0.45) and at the daily rate of $0.45 thereafter until the entry of judgment.

As to interest on the amounts found to be due pursuant to the audit that was conducted, the auditors calculated interest due in the amount of $34,242.60 through November 29, 2011. Upon review of the auditors' worksheets, I find their calculations to be largely correct with a few exceptions. The auditors calculated interest on contributions due for January 2010 based on an inflated number of hours. According to the "Interest Worksheet" attached as Exh. A to the Poulos Declaration, Fortunata underreported 24 hours each to the Welfare, Pension and Job Training Funds. However, the "Audit Worksheet Overall Summary" also attached as Exh. A to the Poulos Declaration, as well as the individual audit worksheets for each employee, which I have reviewed, reflect only 6 hours unreported for each of those Funds. Thus, the correct amount of interest through November 29, 2011 for contributions due for January 2010 is $19.98 for the Welfare Fund, $19.98 for the Pension Fund and $0.20 for the Job Training Fund. Likewise, the number of hours underreported to the Welfare, Job Training and Vacation Funds on the "Interest Worksheet" for September 2009 are incorrect. Instead of 49.5 hours underreported to each of those Funds, the calculations should have been based on 45.5 hours underreported. Thus, the correct amount of interest through November 29, 2011 for contributions due for September 2009 is $181.47 to the Welfare Fund, $1.77 to the Job Training Fund and $63.12 to the Vacation Fund. Accordingly, the total amount of interest due to the Funds pursuant to the audit through November 29, 2011 is $34,107.28. Calculating interest through February 14, 2014 results in additional interest of $33,257.99 for a total of $67,365.27 and at the daily rate of $41.11 thereafter until the entry of judgment.

2. *Interest on Late Payments*

Plaintiffs state that Fortunata also owes interest for late payments for the

weeks ending December 25, 2009 and January 1, 2010, which were paid before this action was commenced. Although plaintiffs have no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed on February 3, 2012, *see Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir.1995) ("no [section 1132(g)(2)] suit can be commenced in the absence of unpaid contributions"), a contractual basis exists for recovering interest and attorneys' fees for those untimely contributions under the Trust Agreement. *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir.2001) (Fund could enforce a plan's provisions imposing interest and liquidated damages on late contributions paid before the suit was brought even where § 1132(g)(2) did not apply); *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 390 (6th Cir.1991) ("a fund has a valid claim for late payment and/or audit damages pursuant to its collective bargaining agreements with defendants"); *LaBarbera v. T & M Specialties Ltd.*, 2007 WL 2874819, at *2 (E.D.N.Y.2007); *Finkel v. East End Elec. Assocs., Ltd.*, 2007 WL 2572169, at *7–*8 (E.D.N.Y.2007). Thus, plaintiff is entitled to interest at a rate of 18% for a total of $341.53 in interest for those two late payments. *See* Adler Decl., Ex. D.

### 3. *Interest on Unpaid Settlement Amounts*

■ As to interest on the balance due under the settlement agreement, plaintiffs calculated interest on the declining settlement balance from the date the first payment was due. Adler Decl. at ¶ 45. According to plaintiffs, "[p]ursuant to the terms of the Stipulation, the Employer is obligated to remit interest due pursuant to the Stipulation's terms." *Id.* at ¶ 44. In calculating interest, plaintiffs applied an interest rate of 18%, the rate provided for in the Trust Agreement for unpaid contributions. However, contrary to plaintiffs' claim, the settlement agreement does not provide for the payment of interest. *See* Cody Decl., Exh. E. The agreement provided that in the event that Fortunata defaulted on installment payments, plaintiffs retained the right to pursue Default Judgment in the Prior Action, including interest and attorneys' fees. As discussed, this claim is not one under ERISA for unpaid contributions, but a claim for breach of contract for which plaintiffs seek only the amount unpaid under the settlement agreement rather than the amount of unpaid contributions. Accordingly, interest on the payments that were due under the settlement agreement is available only to the extent plaintiffs are entitled to it as an element of damages for defendant's breach of the agreement. "Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract." *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998). The statutory interest rate applicable to breach of contract actions is 9% per annum. N.Y. C.P.L.R. § 5001(b). Thus, I recommend awarding interest at the rate of 9% per annum rather than 18%.

Fortunata's first missed payment was due on September 30, 2010 and a balance of $36,000 remains unpaid.[5] Thus, I recommend awarding interest on $36,000 at the rate of 9% in the amount of $10,957.92 from September 30, 2010 through Febru-

---

**5.** Several of Fortunata's installment payments were paid late. However, since the longest delinquency was less than three months, the interest that would be due on each $3,000 payment is de minimis.

ary 14, 2014 and at the daily rate of $8.88 thereafter until the entry of judgment.[6]

### 4. *Interest on Benefits Paid to Mascia*

■■■ Although pre-judgment interest for fraud claims is mandatory under New York law, *see Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 28 (2d Cir.1986), plaintiffs have not requested interest on the benefits paid on behalf of Vincent Mascia.

### 5. *Summary of Interest*

In sum, I recommend awarding plaintiffs $105,681.53 in interest up until February 14, 2013, consisting of $94,382.08 for unpaid contributions accruing at 18% per annum, $472.95 for the two late payments and $10,957.92 for interest on unpaid settlement amounts accruing at a rate of 9%. Interest shall continue to accrue at a daily rate of $69.05 thereafter until the entry of judgment.

### G. *Liquidated Damages*

■■■ Section 502(g)(2)(c) of ERISA also provides for additional interest or liquidated damages on unpaid contributions in an "amount equal to the greater of—(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)." 29 U.S.C. § 1132(g)(2)(c). The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA. *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co., Inc.*, 2006 WL 1292780, at *4 (S.D.N.Y. 2006); *see also Idaho Plumbers & Pipefit-*

ters v. United Mech., 875 F.2d 212, 215 (9th Cir.1989). Article IX, section 3 of the Trust Agreement provides for "[a]dditional damages equal to the greater of (1) [t]he amount of interest charged on the unpaid contributions, or (2) [l]iquidated damages in the form of 20 percent of the unpaid contributions" where an employer is in default for five working days.

As to unpaid contributions for January 2010, February 2010, the weeks ending July 30, 2010, November 5, 2010, April 8, 2011, April 15, 2011 and April 29, 2011, plaintiffs are entitled to additional interest in the amount of $26,543.86. For amounts due pursuant to the audit, plaintiffs are entitled to additional interest in the amount of $67,365.27. Plaintiffs are owed additional interest on estimated contributions for the week ending March 25, 2011 in the amount of $472.95.

The Funds also seek liquidated damages for the late-paid contributions that were paid prior to the suit being filed. As discussed above, however, plaintiffs are not entitled to statutory remedies under 29 U.S.C. § 1132(g)(2) for contributions paid prior to suit. Therefore, any liability for liquidated damages for these late-paid contributions must stem from one of the labor agreements.

■■■ I recommend denying such additional damages on this record. Many courts which have considered an award of liquidated damages under labor contracts have recognized the concomitant need to "examine whether the liquidated damages provision in the operative collective bargaining agreements constitute a penalty under the federal common law." *In re Michigan Carpenters*, 933 F.2d at 390 (citing *Idaho Plumbers*, 875 F.2d at 217–18); *see also United Order of Am. Bricklayers*

---

**6.** I recommend awarding interest only on the unpaid principal of $36,000 rather than the

additional $225 in administrative fees for the dishonored checks.

*and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.,* 519 F.2d 331, 337 (7th Cir.1975); [7] *Alliance Elec., Inc. v. Local Union No. 98, Int'l Broth. of Elec. Workers,* NO. CIV. A. 91–6892, 1992 WL 358072, at *9 (E.D.Pa. Oct. 20, 1992); *Bd. of Trustees of Local 41, Int'l Broth. of Elec. Workers Health Fund v. Zacher,* 771 F.Supp. 1323, 1334–35 (W.D.N.Y.1991). In order to be enforceable, a liquidated damages provision in a labor agreement must satisfy two conditions: (1) "the harm caused by the breach must be very difficult or impossible to estimate" and (2) "the amount fixed must be a reasonable forecast of just compensation for the harm caused." *Bricklayers Pension Trust Fund v. Rosati, Inc.,* 23 Fed.Appx. 360 (6th Cir.2001); *Michigan Carpenters,* 933 F.2d at 390; *Idaho Plumbers,* 875 F.2d at 216; *see also Zacher,* 771 F.Supp. at 1334–35 (enforceability of liquidated damages provision to late-paid contributions requires "scrutiny of the facts and circumstances of each case").

 Here, there has been no evidence submitted as to whether the harm caused is difficult to estimate nor whether there is a rational relationship between the damages and the harm suffered. There may be instances where inquiry into the propriety of liquidated damages may not be necessary if the amounts involved are *de minimis* or the formula for damages bear some relationship to the delay in payment. Here, one of the two late payments was only about one month late and the defen-

dant is already being charged 18% interest, a substantially higher than market rate. *See Alliance Elec.,* 1992 WL 358072, at *8–*10 ("requiring the parties to develop a record in order to allow the Court to consider whether the combined effect of the liquidated damages provision and the interest provision is to penalize plaintiffs for delinquent contributions"). Thus, I recommend denying liquidated damages for contributions that were paid prior to the suit being filed. *See Zacher,* 771 F.Supp. at 1334–35 (denying summary judgment as to applicability of liquidated damages provision).

In total, plaintiffs are entitled to additional interest of $94,382.08 for unpaid contributions through February 14, 2014 and at a daily rate of $60.17 thereafter until the entry of judgment.

### H. *Attorneys' Fees and Costs*

Section 502(g)(2) of ERISA provides that in any action by a fiduciary for a plan in which judgment in favor of the plan is awarded, the court shall allow "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The award of attorneys' fees is mandatory. *See Labarbera v. Clestra Hauserman Inc.,* 369 F.3d 224, 226 (2d Cir.2004).

 The Second Circuit utilizes the "presumptively reasonable fee" method to determine reasonable attorneys' fees or "the number of hours reasonably expended on the litigation multiplied by a reasonable

---

**7.** While not expressly overruling *Thorleif,* the Seventh Circuit in *Gustafson Constr.,* 258 F.3d at 655 (Posner, J.), clearly rejected the notion that courts should examine whether liquidated damages are punitive. As the Court explained, "while the ban on contractual penalties remains an established principle of the law of contracts, it is antiquated and should not be extended into ERISA-land [since i]t is easy to assign nonexploitive rea-

sons for contractual penalties and hard to give convincing reasons why in the absence of fraud or unconscionability consenting adults ... should be prohibited from agreeing to such provisions." *Id.; see also T & M Specialties,* 2007 WL 2874819, at *5 (awarding liquidated damages without discussion); *Fanning v. S.M. Lorusso & Sons, Inc.,* 2004 WL 187330, at *4 n. 2 (D.Mass.2004).

hourly rate." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 183–84 (2d Cir. 2008); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989). In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. *See Lunday v. City of Albany,* 42 F.3d 131, 133 (2d Cir.1994); *DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Lunday,* 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983).

▆▆▆ A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190. Reasonable hourly rates are determined by examining the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *Blum v. Stenson,* 465 U.S. 886, 894, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. *Chambless,* 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. *See Arbor Hill,* 522 F.3d at 190–91. Although plaintiffs selected out-of-district counsel here, I recommend awarding attorneys' fees based on the prevailing hourly rates in this district. *See Simmons v. N.Y. City Transit Auth.,* 575 F.3d .170, 174–77 (2d Cir.2009).

Plaintiffs seek to recover fees of $24,842.10. The declaration of Michael S. Adler and the supplemental declaration of Theresa Cody set forth hourly billing rates and contemporaneous time records which describe the nature of the work done, the hours expended and the date on which the work was done. The plaintiffs retained two law firms to handle this matter. The law firm of Avram H. Schreiber initially served as counsel to the plaintiffs through June 2011 and Cohen, Weiss, and Simon LLP ("CWS") represented plaintiffs in this matter from February 2010 to present.

Plaintiffs' request for fees for the work of the Schreiber Firm is based on rates of $300 per hour for Avram Schreiber, an attorney admitted in 1969, $225 per hour for Woomee Lee, an attorney admitted in 2004, and $80 per hour for paralegal Denise Dees. Cody Supp. Decl. at ¶ 15. I find Mr. Schreiber's hourly billing rate of $300 per hour to be reasonable based on my knowledge of prevailing rates for such matters in New York. *See La Barbera v. Bestech Transport, LLC,* 2011 WL 1316153, at *8 (E.D.N.Y.2011) (recommending award of $300 per hour for Mr. Schreiber); *Gesualdi v. PAV–CO Asphalt Inc.,* 2011 WL 2433731, at *5 (E.D.N.Y. 2011) (approving rate of $300 per hour for Mr. Schreiber). I also find the rate of $225 per hour reasonable for an attorney

with Ms. Lee's experience. *See Finkel v. Detore Elec. Const. Co.*, 2012 WL 1077796, at *12 (E.D.N.Y.2012) (approving hourly rate of $260 for senior associate); *Ferrara v. All American Trucking Servs., Inc.*, 2012 WL 1042936, at *6–*7 (E.D.N.Y.2012) (approving rate of $275 per hour for senior associate). I further recommend that the paralegal's billing rate of $80 per hour be approved. *See All American*, 2012 WL 1042936, at *6–*7 (approving rate of $90 per hour for paralegal); *Ferrara v. PI Trucking Corp.*, 2011 WL 7091562, at *4 (E.D.N.Y.2011) (same).

The rates billed by Cohen, Weiss & Simon are based on a two-tiered structure. For tasks relating to the audit, the hourly rates billed are as follows: $370 per hour for partners through June 30, 2011 and $400 per hour thereafter, $275 per hour for associates through June 30, 2011 and $375 per hour thereafter, $90 per hour for paralegals through June 30, 2011 and $110 per hour thereafter. For matters relating to the collection of unpaid contributions, the hourly rates billed are as follows: $275 per hour for partners, $250 per hour for senior associates, $225 per hour for junior associates, and $100 per hour for paralegals. Plaintiffs' counsel explains that the higher rates for work relating to obtaining an audit is attributable to "the high degree of difficulty in obtaining audits from signatory employers." Adler Decl. at ¶ 16 n. 7.

Ordinarily, $24,842.10 in attorneys' fees would be an exorbitant amount in an ERISA default case. However, here, in addition to drafting the complaint and preparing the default motion papers, the attorneys spent a significant amount of time attempting to obtain the relevant documentation necessary to conduct the audit. The employer also appeared for a pre-litigation deposition and engaged in settlement discussions with plaintiffs. Nonetheless, I recommend awarding less than the amount requested for attorneys' fees for the reasons discussed below.

Since the rate of $400 per hour is at the high end of rates awarded in ERISA default cases in this district, I recommend reducing that rate to $390 per hour and approving the rate of $275 per hour sought for hours expended by partner Joseph Vitale who has been practicing labor and employee benefits law since 1989, and approving the rate of $275 per hour sought for work by partner Peter DeChiara. *See La Barbera v. Smith*, 2011 WL 7139122, at *3 (E.D.N.Y.2011) (approving rate of $390 per hour for partner who graduated law school in 1990); *Gesualdi v. MBM Indus., Inc.*, 2010 WL 3724348, at *2 (E.D.N.Y. 2010) (approving rate of $390 per hour for partner who graduated law school in 1993). The hourly rate of $370 per hour charged by Ms. O'Leary, a 1996 law school graduate who was been practicing labor and employee benefits law since 1998, should be reduced slightly to $350 per hour. *See Gesualdi v. Andrews Trucking*, 2010 WL 2301028, at *6 (E.D.N.Y.2010) (reducing rate of partners to $350 per hour). The hourly rate of $375 charged by senior associates David Hock, who graduated law school in 1999, and Michael Adler, who graduated law school in 2002, is higher than is typically approved for associates in an ERISA default case. I recommend reducing Mr. Hock's and Mr. Adler's higher rates to $275 per hour and approving Mr. Adler's lower rate of $250 per hour. *See Detore Elec.*, 2012 WL 1077796, at *11–*12 (approving requested rates for Mr. Adler of $225 per hour for work done prior to January 1, 2011 and $250 per hour for work done thereafter and rate of $260 for Mr. Hock); *All American*, 2012 WL 1042936, at *6–*7 & n. 3 (approving rate of $275 per hour for Mr. Adler); *PI Trucking*, 2011 WL 7091562, at *4 (reducing Mr. Adler's rate to $250 per hour). The rate of $225 per hour charged by Ms. Swearen-

gen is high for a junior associate who graduated law school in 2011. Thus, I recommend reducing Ms. Swearengen's higher rate to $175 per hour and approving her rate of $100 per hour. *See Finkel v. Rico Elec., Inc.*, 2009 WL 3367057, at *5 (E.D.N.Y.2009) (reducing junior associates' rate to $200 per hour); *LaBarbera v. Frank J. Batchelder Transp. LLC*, 2009 WL 240521, at *5 (E.D.N.Y.2009) (reducing junior associate rates from $225 per hour to $120 and $100). I further recommend that the paralegals' billing rate of $90 be approved but the higher rates of $100 per hour and $110 per hour be reduced to $90 per hour. *See All American*, 2012 WL 1042936, at *6–*7; *PI Trucking*, 2011 WL 7091562, at *4.

Having reviewed the billing records provided, I find that some of the time spent on this case is excessive. The earliest billing records submitted from each law firm are from February 2010, two years before the complaint in this action was filed. The CWS records reflect time spent on drafting a complaint, summons and civil cover sheet on February 25, 2010. According to the docket sheet for the 09–cv–3001 action, the Schreiber Firm filed a notice of voluntary dismissal on the same date, February 25, 2010. *See* ct. doc. 11 in 09–cv–3001. Plaintiffs do not explain why one law firm was drafting a complaint against defendant on the same day that another firm was discontinuing plaintiffs' claims against the same defendant or why they seek attorneys' fees for both tasks.

■ In any event, attorneys' fees for the time spent by the Schreiber Firm on finalizing, administering and monitoring compliance with the settlement agreement is not compensable. The settlement agreement provides that attorneys' fees

are included in the settlement amount, which plaintiffs acknowledge. Some of the time entries relating to the settlement are contained in block entries so that the Court cannot separate time spent on work relating to the settlement from the time spent on other work. I recommend denying attorneys' fees for those entries. *See Green v. City of N.Y.*, 403 Fed.Appx. 626, 630 (2d Cir.2010) (affirming across the board reduction in hours due to block billing).

In addition, some of the time entries in the billing records of the Schreiber Firm do not relate to the claims in this action. There are many entries relating to the Funds' referral to counsel for collection contributions that were not paid. However, some of the time periods encompassed by the "referral" are not at issue in this litigation, i.e., 8/27/10, 9/24/10, 10/1/10 through 10/15/10, 12/3/10, 1/7/11 through 1/28/11.[8] I recommend denying attorneys' fees relating to those entries.

■ The CWS entries also reflect excessive time spent on this case. Plaintiffs' counsel billed 13.9 attorney hours and 44.70 paralegal hours on the motion for default judgment alone at a cost of $7,945. *See* Adler Decl., Exh. E (billing statement ending on 3/21/12). Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case. *See Gesualdi v. Andrews Trucking Corp.*, 2010 WL 2301028, at *7 (E.D.N.Y. 2010); *see also Martone v. HST Roofing, Inc.*, No. 03–CV–4165, 2007 WL 595054, at *3 (E.D.N.Y.2007) (awarding fees for 20 hours of attorney time and five hours for paralegal time in ERISA default judgment case); *LaBarbera v. David Liepper & Sons, Inc.*, No. CV–06–137, 2006 WL

---

**8.** Although attorneys' fees are recoverable under the Trust Agreement even where collection actions do not result in litigation,

plaintiffs have not provided any basis for the referral to counsel for these time periods.

2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.7 hours reasonable in ERISA default judgment case); *Del Turco v. Carrara Contractors, Inc.,* No. 03 CV 5538, 2006 WL 1783632, at *3–*4 (E.D.N.Y. June 23, 2006) (awarding fees for 25.05 hours for attorneys and 2.6 hours for legal assistants in ERISA default judgment case). Although this action is more complicated than a typical ERISA default case, 58.6 hours is excessive for a default motion, particularly since some of the additional time was necessitated by insufficient submissions in the first place. I recommend a 50% reduction in the hours billed by the paralegal. This would result in an award of $5,486.50 for the time spent on the default motion, still much higher than average.

Applying these reductions, I recommend awarding attorneys' fees of $12,925.60 for work conducted by CWS and $4,279 for work conducted by the Schreiber Firm for a total of $17,204.60.

The Funds also seek $890 in costs, including the court filing fee, service of process fees, deposition transcript fees and the costs of photocopying and postage. *See* Adler Decl. at ¶ 77, Exhs. E, F; Cody Supp. Decl., Exh. B. Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998); *United States Football League v. National Football League,* 887 F.2d 408 (2d Cir.1989). On the other hand, ordinary overhead expenses are not recoverable. *See LeBlanc–Sternberg,* 143 F.3d at 763. Here, plaintiffs' request for costs includes only recoverable litigation costs. *See Aston v. Secretary of Health & Human Servs.,* 808 F.2d 9, 12 (2d Cir.1986) (photocopying and postage are reimbursable costs). Accordingly, I recommend that plaintiffs be awarded $890 in costs.

**I.** *Audit Fees*

Plaintiffs request audit fees in the amount of $6,400.50. Mr. Poulos states that his firm's fees are based on negotiated hourly rates. Poulos Decl. at ¶ 29.

██ Both ERISA and the applicable labor agreements authorize plaintiffs to recover audit costs. *See Int'l Bd. of Elec. Workers Local No. 43 Pension, Annuity and Health and Welfare Funds v. Kay–R Elec. Corp.,* 2011 WL 2976266, at *5 (N.D.N.Y.2011); *Andrews Trucking Corp.,* 2010 WL 2301028, at *7; Trust Agreement at art. IX, § 3(b) ("[a]uditor's fees—$350, or such other amounts as the Trustees in their discretion shall apply"). However, requests for audit fees must be supported by "records . . . sufficient to allow the court to determine the reasonableness of the audit costs." *Kay–R Elec.,* 2011 WL 2976266, at *5; *Andrews Trucking,* 2010 WL 2301028, at *7. Determination of reasonable audit fees are governed by "the same standards the court applies in awarding attorneys' fees." *Trustees of Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.,* 2009 WL 2461738, at *5 (E.D.N.Y.2009); *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.,* 545 F.Supp.2d 260, 269 (E.D.N.Y.2008). "Accordingly, the evidence supporting an audit fee request under 29 U.S.C. § 1132(g)(2)(E) must include, at minimum, some breakdown of the auditors' rates charged and hours expended." *Axiom Plumbing,* 2009 WL 2461738, at *5; *Masino v. Tucci Equip. Rental Corp.,* 2008 WL 5451005, at *2 (E.D.N.Y.2008).

Here, plaintiffs have not submitted any documentation to substantiate their request for audit fees. Plaintiffs have not provided any basis as to the rates charged by the auditors or the time they spent conducting the audit. Absent such expla-

nation, the court cannot determine whether the amount requested is reasonable. *See Axiom Plumbing*, 2009 WL 2461738, at *5 (denying audit fees for failure to submit necessary information); *Cruz v. U.S. Health Clean*, 2009 WL 1562749, at *7 (S.D.N.Y.2009) (same); *Tucci Equip.*, 2008 WL 5451005, at *1 (same); *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip General Constr.*, 2007 WL 3124612, at *14 (E.D.N.Y.2007) (same). On the other hand, some work was clearly conducted by the auditors and it would be unfair to entirely deny plaintiffs the costs of the audit. "Where calculation of unpaid contributions during an audit appears particularly complicated or time-consuming, a higher award of audit costs is justified." *Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation and Scholarship Funds v. Creative Installations, Inc.*, 2012 WL 4482815, at *8 (E.D.N.Y.2012). Therefore, I recommend awarding plaintiffs $700 in audit costs.

### J. Injunctive Relief

Plaintiffs seek an order requiring Fortunata to submit all outstanding remittance reports.

In an action brought under section 1145 of ERISA, a court may award in addition to monetary damages "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Lanzafame v. Dana Restoration, Inc.*, 2010 WL 6267657, at *13–*14 (E.D.N.Y.2010) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, 2007

WL 2712314, at *5 (E.D.N.Y.2007)); *see Sullivan v. Marble Unique Corp.*, 2011 WL 5401987, at *14 (E.D.N.Y.2011).

Pursuant to the Trust Agreement and the CBAs, Fortunata is required to submit remittance reports to the Funds on a weekly basis to verify that all contributions are paid. Thus, I respectfully recommend that Fortunata be directed to provide the Funds with any outstanding remittance reports. *See Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 581–82, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); *see also All American*, 2012 WL 1042936, at *3 (recommending that defendant and affiliates be ordered to submit to audit).

### CONCLUSION

For the foregoing reasons, I recommend that the Court award the Funds judgment against defendant Fortunata Carting Inc. in the amount of $382,381.41 based on the following total damages: (a) $122,012.01 in unpaid contributions; (b) $5,286.19 in recoupment of net benefits paid to defendant Mascia; (c) $36,225 due under the settlement of the Prior Action; (d) $105,681.53 in interest through February 14, 2013 and at a daily rate of $69.05 thereafter until the entry of judgment; (e) additional interest under section 502(g)(2)(C) of ERISA of $94,382.08 for unpaid contributions through February 14, 2014 and at a daily rate of $60.17 thereafter until the entry of judgment; (f) $700 in audit fees; (g) $17,204.60 in attorneys' fees; and (h) $890.00 in court costs. I further recommend that plaintiffs' request for an order requiring defendant to submit all outstanding remittance reports be granted.

This report and recommendation will be filed electronically and a copy sent by mail to the defendant on this date. Any objections to this Report and Recommendation must be filed, with a courtesy copy sent to

the Honorable William F. Kuntz, II and the undersigned, by February 21, 2014. Failure to file objections within the specified time waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

**SO ORDERED.**

Filed Feb. 4, 2014.